IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00079 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NAEEM J. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR ORDER FOR INSPECTION AND COPYING OF COURT'S JURY
RECORDS AND DENYING THE GOVERNMENT'S MOTION TO COMPEL
DEFENDANT NAEEM WILLIAMS TO DISCLOSE WHICH ETHNIC MINORITIES
HE ALLEGES WERE UNDERREPRESENTED IN GRAND JURY PANEL 05-I**

Before the Court is Defendant Naeem J. Williams'

("Defendant") Motion for Order for Inspection and Copying of

Court's Jury Records ("Inspection Motion"), filed February 5,

2007, and the United States of America's ("the Government")

Motion to Compel Defendant Naeem Williams to Disclose which

Ethnic Minorities He Alleges Were Underrepresented in Grand Jury

Panel 05-I ("Motion to Compel"), filed April 2, 2007.  The

Government filed its response to the Inspection Motion on

February 23, 2007, and Defendant filed his reply on March 1,

2007.  The Government filed a supplemental response on April 2,

2007 and Defendant filed a reply to the supplemental response on

April 11, 2007.[1]  Defendant filed an opposition to the Motion to

_____

[1] On March 28, 2007, this Court granted the Government's
(continued...)

Compel on April 11, 2007, and the Government filed its reply on April 13, 2007.  These matters came on for hearing on April 19, 2007.  Appearing on behalf of Defendant, who was present, were John Philipsborn, Esq., and David Klein, Esq., and appearing on behalf of the Government were Marshall Silverberg, Assistant United States Attorney, and Gabriel Colwell, Special Assistant United States Attorney.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, Defendant's Inspection Motion is HEREBY GRANTED IN PART and DENIED IN PART, and the Government's Motion to Compel is HEREBY DENIED for the reasons set forth below.

## BACKGROUND

The parties and the Court are familiar with the factual and procedural background in this case.  This Court will therefore only address the events that are relevant to the motions currently before the Court.

On February 15, 2006, the grand jury issued an Indictment in the instant case, charging Defendant with first degree murder, in violation of 18 U.S.C. §§ 1111(a), (b), and 7(3).  The Indictment included notice of three death-qualifying special findings within the meaning of 18 U.S.C. § 3591(a), and two aggravating factors within the meaning of 18 U.S.C. §

---

[1](...continued)
motion for leave to file a supplemental response and also gave Defendant leave to file a reply to the supplemental response.

3592(c).  On September 8, 2006, the Government filed its Notice
of Intent to Seek the Death Penalty as to Defendant Naeem J.
Williams.  On October 12, 2006, the grand jury issued a four-
count First Superceding Indictment against both Defendant and
Delilah Williams.  On October 26, 2006, the Government filed an
Amended Notice of Intent to Seek the Death Penalty as to
Defendant Naeem J. Williams.

## I.   **Inspection Motion**

In his Inspection Motion, Defendant states that he is
preparing a motion challenging the district court's jury
selection procedures.  To assist him in this process, Defendant
requests various jury records pursuant to the Jury Selection and
Service Act of 1968, 28 U.S.C. § 1861, *et seq.* ("the Act"), Test
v. United States, 420 U.S. 28 (1975), and case law interpreting
the Act.  Some of the specific items he requests are: any JS-12
reports, or their equivalent, containing information about the
composition and characteristics of jurors in this district from
2004 through the grand juries that indicted Defendant; if no such
reports exist, the juror questionnaires; a copy of the master
jury wheel; a copy of the qualified jury wheel for the indicting
grand jury; and any manuals or other documents describing how the
grand jury was selected in this case.  [Inspection Motion at 3-
6.]  Although district courts are required to keep statistics
about the operation of their jury systems and they commonly do

this through regular JS-12 reports, the United States District Court for the District of Hawai`i ("district court") has not recently generated JS-12 reports.  It does however, have the raw data which can be used to compile such reports.  [Mem. of Points & Auth. in Supp. of Inspection Motion at 4-5.]  Defendant also asks the Court to continue his trial to allow him time to inspect the jury records and for any challenge that he brings regarding the jury selection process to be resolved.  [Inspection Motion at 2.]

Defendant suspects that, while the demographic composition of the population in the district from the 2000 Census changed by the middle of the decade, the grand and petit jury pool has not reflected that change.  [Mem. of Points & Auth. in Supp. of Inspection Motion at 6-7, 12.]  Defendant argues that his concern and need for the jury records are heightened by the fact that: the district court apparently does not keep readily ascertainable records of juror demographics; the district court will be implementing a new jury selection process and its effectiveness will not be established before Defendant's trial; and the possibility of the death penalty increases the importance of propriety in the jury selection process.  Defendant, however, acknowledges that the relevant statutes and case law do not establish that the right of access to jury records increases with the severity of the potential punishment.  [Id. at 13-16.]

In its response, the Government recognizes Defendant's unqualified right to certain jury records, but it argues that many of the records Defendant seeks were produced to the defense according to this Court's December 4, 2006 order granting in part and denying in part Defendant's Motion for Disclosure of Ministerial Grand Jury Records.  [Gov.'s Response to Inspection Motion at 2-4.]  The Government states that it is also willing to produce: the district court's plan for jury selection; the list of names from which Grand Jury Panels 04-II, 05-I, and 06-I were selected; and the 28,751 jury questionnaires used to select the qualified jurors for Panel 05-I (the grand jury that handed down both of Defendant's indictments), provided that the potential jurors' addresses and telephone numbers are redacted.[2]  [Id. at 4-5.]  The Government states that it will cost $4,977.81 to prepare two sets of the questionnaires, one for Defendant and one for the Government.  The Government argues that the district court should bear such cost because it did not keep JS-12 reports.  The Government, however, asserts that review of these questionnaires is a relatively simple process and therefore it is not necessary to appoint an expert to assist Defendant or to

---

[2] The Government agrees that the questionnaires themselves are discoverable because the district court did not compile a JS-12 report for that period.

continue the trial date.[3]  [Id. at 6-7.]  In addition, the Government addresses the potential merit of Defendant's anticipated argument that African-Americans are underrepresented in the jury pool.  [Id. at 7-9.]

In his reply, Defendant acknowledges that he received additional records from the Government since the filing of the Motion.  Defendant, however, argues that he needs further documents to determine whether the district court has complied with the Act.  [Reply at 2, 8.]

Defendant argues that does not need to prove that his ethnicity was underrepresented in the jury pool in order to establish a fair cross section claim.  Defendant also argues that a stay of the proceedings is one of the available remedies for a substantial failure to comply with the Act and that the Court should stay the case until the disclosures of the jury records are made so that the parties can review the information. Defendant argues that, even if the district court produces a JS-12 report, he is still entitled to the raw data used to compile the report so that he can verify the report's contents.  Such confirmation is necessary because the district court did not keep

---

[3] Defense counsel states in his declaration that, where statistics for a fair cross section challenge have to be compiled "from scratch", the "work is normally carried out by a Ph.D. level researcher, knowledgeable in the operation of jury systems, and current on information about demographic research." [Inspection Motion, Decl. of Counsel at ¶ 14.]

consistent JS-12 records.  [Reply at 3-4.]  Defendant also reiterates that he is entitled to information about the current operation of the jury selection process because it will affect the selection of his petit jury.  [Id. at 5.]

In the Government's supplemental response, it argues that Defendant is not entitled to a stay merely because the district court has not prepared JS-12 reports.  A stay is only warranted for a substantial failure to comply with the Act and the failure to prepare the JS-12 report is only a technical violation which can be easily remedied.  Based on information from the Clerk of the Court, the report could be ready by the end of April and Defendant could easily prepare his fair cross section challenge by the July 2, 2007 pretrial motions deadline. [Gov.'s Supp. Response to Inspection Motion at 2-4.]

The Government recognizes that the district court need not address the issue of whether Defendant has standing to raise a fair cross section claim regarding the alleged underrepresentation of another ethnic group until Defendant files a substantive motion.  The Government, however, notes its disagreement with one of the cases that Defendant cited in support of his position on the issue.[4]  [Id. at 5-6.]

_____

[4] The Government also argued that Defendant was not entitled to the names of the potential jurors on the master jury wheel. [Gov.'s Supp. Response to Inspection Motion at 6-7.]  The Government, however, subsequently withdrew this objection.

In his reply to the Government's Supplemental Response, Defendant points out that, although the Government focuses on the district court's failure to maintain JS-12 reports, he does not allege that the failure to maintain the reports is the only way that the district court failed to comply with the Act.  Thus, the compilation and production of the JS-12 report will not address all of his concerns.  For example, the district court's questionnaire does not include all of the ethnicities reflected in the 2000 Census and some of the omitted ethnicities are critical groups in the Hawai`i population.  Defendant also seeks evidence of the court policies on disqualification, which court personnel informed him are transmitted by word of mouth, as well as information about how the district court and its contractor operates the random selection plan for selecting jury lists.  [Def.'s Supp. Reply re Inspection Motion at 3-8.]  Defendant also argues that United States Supreme Court case law clearly establishes that he, an African-American, has standing to bring a fair cross section claim alleging that another ethnic group was improperly excluded from the jury pool.  [Id. at 8-10.]

## II.  **Motion to Compel**

The Government seeks an order compelling Defendant to disclose which ethnic group, or groups, he believes was underrepresented in Grand Jury Panel 05-I.  The Government states that it conceded Defendant's right to some of the requested jury

8

records based on his representation that he has a good faith basis to file a motion challenging the district court's jury selection process.  The Government points out that, in order to establish a prima facie violation of the fair cross section requirement, Defendant must establish that: the group which was allegedly excluded is a distinct group in the community; the representation of that group in the jury venires does not fairly and reasonably reflect the group's percentage in the community; and the underrepresentation is due to the systematic exclusion of the group in the jury selection process.  The Government concedes that it has been unable to find a statutory requirement that a defendant make a prima facie case before requesting jury selection data, but the Government asserts that he is not entitled to an unrestricted fishing expedition.  It argues that Defendant should have a good faith basis for requesting jury records, particularly in light of the significant expense that the district court and the parties will incur in producing and evaluating the records.

        In his memorandum in opposition, Defendant argues that he has a right to the jury records and that the law does not require him to allege a specific cause or even a good faith basis for his request.  Further, insofar as Defendant does not currently have access to the Court's records, he cannot identify what challenges he may raise concerning the district court's jury

selection process.  Although he has theories about which groups were underrepresented, he cannot test these theories without the jury records, particularly in light of the fact that the district court has not kept statistical compilations regarding the composition of its jury pool.  Defendant also stresses that, although he will ultimately have the burden to prove a constitutional or statutory violation, he need not satisfy that burden in order to obtain the jury records.  All he need do is allege that he is preparing a motion challenging the jury selection process.

In its reply, the Government argues that the Act and <u>Test</u> require Defendant to disclose the basis of his planned fair cross section challenge.  The Government clarifies that it is not asking Defendant to make a prima facie case of a fair cross section violation.  It only wants Defendant to state whether he is preparing a motion challenging the district court's jury selection process and which group, or groups, he alleges was underrepresented.  Defendant stated in his opposition that he has theories about which groups were underrepresented; the Government wants him to disclose those theories.  The Government argues that this is necessary to ensure that he is not engaging in a fishing expedition that would waste the Court's and the parties' time.

## DISCUSSION

The Act states that: "It is the policy of the United

States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."  28 U.S.C. § 1861; see also U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."); United States v. Rodriguez-Lara, 421 F.3d 932, 938 n.2 (9th Cir. 2005) ("[t]he test for a constitutionally selected jury is the same whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act." (citation and quotation marks omitted)).

The Act also provides that: "No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status."  28 U.S.C. § 1862.  Under the Act, the district court is required to have a written plan for random selection of grand juries and petit juries, according to the objectives in §§ 1861 and 1862.  See 28 U.S.C. § 1863.  If a grand jury or petit jury is selected in violation of the Act's fair cross section guarantee,[5] a defendant

_____

[5] To establish a prima facie case of a fair cross section violation, the defendant must show:

(continued...)

11

is entitled to relief, even without a showing of prejudice.  <u>See</u>

<u>Rodriguez-Lara</u>, 421 F.3d at 940-41.

> In criminal cases, before the voir dire
> examination begins, or within seven days after the
> defendant discovered or could have discovered, by
> the exercise of diligence, the grounds therefor,
> whichever is earlier, the defendant may move to
> dismiss the indictment or stay the proceedings
> against him on the ground of substantial failure
> to comply with the provisions of this title in
> selecting the grand or petit jury.

28 U.S.C. § 1867(a).  Such a motion must contain a "sworn

statement of facts which, if true, would constitute a substantial

failure to comply with the provisions" of the Act.  § 1867(d).

If the motion contains the sworn statement, the litigant is

entitled to present supporting evidence to the court.  If the

court determines that there was a substantial failure to comply

with the Act in the selection of the grand jury, the court may

---

[5](...continued)
> (1) that the group alleged to be excluded is a
> "distinctive" group in the community; (2) that the
> representation of this group in venires from which
> juries are selected is not fair and reasonable in
> relation to the number of such persons in the
> community; and (3) that this underrepresentation
> is due to systematic exclusion of the group in the
> jury-selection process.

<u>Rodriguez-Lara</u>, 421 F.3d at 940 (quoting <u>Duren v. Missouri</u>, 439
U.S. 357, 364 (1979)).  "Once the defendant has established a
prima facie case, the burden shifts to the government to show
that 'a significant state interest be manifestly and primarily
advanced by those aspects of the jury-selection process . . .
that result in the disproportionate exclusion of a distinctive
group.'"  <u>Id.</u> (quoting <u>Duren</u>, 439 U.S. at 367-68) (alteration in
original).

either dismiss the indictment or stay the proceedings pending the selection of a grand jury according to the Act.  If the court determines that there was a substantial failure to comply with the Act in the selection of the petit jury, the court must stay the proceedings pending the selection of a petit jury according to the Act.  See id.

In order to obtain evidence to support the sworn statement, the litigant is entitled to "extremely liberal access to otherwise non-public jury selection records[.]"  United States v. Layton, 519 F. Supp. 946, 951 (N.D. Cal. 1981).

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section . . . .  The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. . . .

§ 1867(f).  The Supreme Court has stated that this provides litigants with "essentially an unqualified right to inspect jury lists."  Test v. United States, 420 U.S. 28, 30 (1975); see also Layton, 519 F. Supp. at 958 ("This right is virtually absolute: the only limitation on this right of access is that the inspection must be done at reasonable times." (citation and quotation marks omitted)).  Such access is required to insure that juries are selected at random from a fair cross section of the community.  See Test, 420 U.S. at 30.

13

A defendant need not show a likelihood of success on
the merits of his jury selection challenge.  See United States v.
Diaz, 236 F.R.D. 470, 477 (N.D. Cal. 2006) (citing United States
v. Beaty, 465 F.2d 1376, 1380 (9th Cir. 1972)).  To be entitled
to the jury lists and relevant demographic data, he need only
allege that he anticipates filing a motion challenging the jury
selection procedures.  See id. (citing United States v. Royal,
100 F.3d 1019, 1025 (1st Cir. 1996)).  While a motion challenging
the jury selection process must be accompanied by a sworn
statement of facts, that requirement does not apply to a motion
to gain access to jury selection records.  See id.

## I.  **Motion to Compel**

The Government argues that, before Defendant obtains
the requested jury records, he should disclose which ethnic
group, or groups, he suspects was underrepresented in the jury
pool.  In the present case, the Inspection Motion states that
Defendant "is preparing a motion challenging the District's jury
selection procedures."  [Mem. of Points & Auth. in Supp. of
Inspection Motion at 2.]  That is all he need do to obtain access
to jury records.  Defendant need not allege a good faith good
faith basis for his anticipated challenge to the district court's
jury selection process, nor does he need to give the Government
advance notice of the ethnic group, or groups, that he suspects
is underrepresented in the jury pool.  The Government's Motion to

Compel is therefore DENIED WITHOUT PREJUDICE.

## II.  <u>Inspection Motion</u>

### A.  <u>Production of Jury Records</u>

The Government acknowledges that Defendant has a right to inspect the district court's jury records in order to prepare a motion challenging the jury selection process.  The Government does not object to the production of the requested documents, to the extent that they exist, as long as the potential jurors' personal information is redacted.

Insofar as Defendant has "essentially an unqualified right to inspect jury lists," <u>see</u> <u>Test</u>, 420 U.S. at 30, this Court GRANTS Defendant's request for access to the jury records identified in the Inspection Motion.  The Court, however, finds that there is good cause[6] to redact the potential jurors' personal information, including addresses, telephone numbers, birth dates, and social security numbers, because of their privacy interests in this information and because such information is not relevant to Defendant's potential fair cross section challenge.  <u>See</u> Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); <u>see also</u>

---

[6] To the extent Defendant may submit the documents in support of a substantive motion (<i>e.g.</i>, a motion to dismiss), the Court finds that there are compelling reasons to redact this information as well.  <u>See</u> <u>Kamakana v. City & County of Honolulu</u>, 447 F.3d 1172, 1178–79 (9th Cir. 2006).

Diaz, 236 F.R.D. at 481 (ordering the disclosure of jury lists and jury wheels but prohibiting the disclosure of personal information).

This Court therefore ORDERS the Office of the Clerk of the Court ("Clerk's Office") to produce the records, including general information about the currently proposed changes in the district court's procedures for selecting juries from the jury wheel.  The Court also ORDERS the Clerk's Office to redact all of the potential jurors' personal information before producing such records.  The Clerk's Office shall produce one copy of each document to each party, at the expense of the Clerk's Office. The Clerk's Office shall provide the copies via CD-ROM, or another media that is acceptable to the parties.  The Clerk's Office need only produce the records to the extent that they exist, but the Court ORDERS the Clerk's Office to compile and produce a JS-12 report for Grand Jury Panel 05-I.  The production of the JS-12 report is in addition to the production of the individual juror questionnaires for the master jury wheel from which Grand Jury Panel 05-I was selected.  The Court DIRECTS the parties to meet and confer with the Clerk of the Court, or her designee, to determine deadlines for, and the format of, the production.  The Court also DIRECTS the parties to advise this Court, in writing, of the outcome of the meeting by Friday, April 27, 2007.

**B.**   **Other Requested Relief**

Defendant argues that this Court should continue the trial or stay the case to allow him to review the jury records and bring a challenge to the district court's jury selection process, if appropriate.  Defendant's request is premature.  At the present time, it appears that the parties will be able to review the jury records and file the appropriate motions within the existing trial deadlines.  Defendant's request for a continuance or stay is therefore DENIED WITHOUT PREJUDICE.  After he has reviewed the document production, Defendant can file a motion to continue, if there is a reasonable basis for such continuance.

The Court also notes that it is not clear whether the Inspection Motion requests the appointment of an expert to assist him regarding demographic research.  To the extent that Defendant is making such a request, it is premature.  Defendant's request is DENIED WITHOUT PREJUDICE.  Defendant may file a motion for the appointment of an expert after he has reviewed the document production.

On March 13, 2007, Defendant filed a Request for Setting of Jury Records Discovery Hearing When Specific Court Personnel are Available to the Court ("Request").  Defendant asked that the hearing on the Inspection Motion be set when the Clerk of the Court and the Supervisor of Jury Services were

available to give testimony regarding the availability of specified jury records.  On March 13, 2007, the Government filed a response stating that it had no objection to the Request.  The Court finds that testimony from the Clerk of the Court and the Supervisor of Jury Services is not necessary for the resolution of the Inspection Motion.  Defendant's Request is therefore DENIED WITHOUT PREJUDICE.  After they have reviewed the document production, either party may request an evidentiary hearing to obtain testimony from the relevant district court personnel.

Finally, this Court notes that it need not reach the merits of Defendant's anticipated claim that African-Americans, or another ethnic group, are underrepresented in, and have been systematically excluded from, the district court's jury pool. Either this Court or the district judge will address this issue if and when Defendant files a substantive motion challenging the district court's jury selection process.

## **CONCLUSION**

On the basis of the foregoing, Defendant's Motion for Order for Inspection and Copying of Court's Jury Records, filed February 5, 2007, is HEREBY GRANTED IN PART and DENIED IN PART. The Inspection Motion is GRANTED to the extent that this Court orders the production of the jury records requested therein, according to the Court's instructions listed above.  In all other respects, the Inspection Motion is DENIED WITHOUT PREJUDICE.

Defendant's Request for Setting of Jury Records Discovery Hearing When Specific Court Personnel are Available to the Court, filed March 13, 2007, is also DENIED WITHOUT PREJUDICE.  After Defendant has had the opportunity to review the document production, he may refile any necessary motions seeking: a continuance or stay of the trial; the appointment of an expert to assist in the analysis of the jury records; and/or an evidentiary hearing to take testimony from district court personnel.

Further, the Government's Motion to Compel Defendant Naeem Williams to Disclose which Ethnic Minorities He Alleges Were Underrepresented in Grand Jury Panel 05-I, filed April 2, 2007, is HEREBY DENIED WITHOUT PREJUDICE.  The Government may refile a motion to compel the disclosure of the allegedly underrepresented groups after the parties have had time to review the document production.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, April 23, 2007.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States Magistrate Judge

**U.S.A. V. NAEEM J. WILLIAMS**; CR. NO. 06-00079-01 DAE-LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ORDER FOR INSPECTION AND COPYING OF COURT'S JURY RECORDS AND DENYING THE GOVERNMENT'S MOTION TO COMPEL DEFENDANT NAEEM WILLIAMS TO DISCLOSE WHICH ETHNIC MINORITIES HE ALLEGES WERE UNDERREPRESENTED IN GRAND JURY PANEL 05-I