IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00079 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NAEEM J. WILLIAMS (01) | ) | |
| DELILAH S. WILLIAMS (02), | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER **DENYING** DEFENDANT NAEEM WILLIAMS'S MOTION FOR FINDING THAT THE DEATH PENALTY ACT IS UNCONSTITUTIONAL AND MOTION TO STRIKE FDPA ALLEGATIONS FROM THE SUPERCEDING INDICTMENT AND AMENDED NOTICE OF INTENT TO SEEK THE DEATH PENALTY (**MOTION # 2**) **WITHOUT PREJUDICE**; AND ORDER **DENYING** DEFENDANT'S MOTION FOR RULING THAT NON-STATUTORY AGGRAVATING FACTORS MUST BE CONSIDERED ELEMENTS, SUBJECT TO PROOF BEYOND A REASONABLE DOUBT AND RELIABLE EVIDENCE (**MOTION # 6**)

On October 1, 2007, the Court heard Defendant Naeem Williams's

Motions numbered 2 and 6.  Marshall H. Silverberg, Assistant U.S. Attorney, and

J. Richard Broughton, Attorney for the Department of Justice, appeared at the

hearing on behalf of Plaintiff ("the Government"); David Klein, Esq., and John T.

Philipsborn, Esq., appeared at the hearing on behalf of Defendant Naeem Williams.

After reviewing the motions and the supporting and opposing memoranda, the

Court DENIES Defendant's Motion # 2, WITHOUT PREJUDICE with respect to one argument only, and DENIES Defendant's Motion # 6.

## BACKGROUND

On July 15, 2007, Defendant Naeem Williams filed a Motion for Finding that the Death Penalty Act Is Unconstitutional and Motion to Strike FDPA Allegations from the Superceding Indictment and Amended Notice of Intent to Seek the Death Penalty (Motion # 2, Doc. # 309). The Government filed an opposition on September 18, 2007, and Defendant filed a reply on September 24, 2007.

On July 31, 2007, Defendant filed a Motion for Ruling that Non-Statutory Aggravating Factors Must Be Considered Elements, Subject to Proof Beyond a Reasonable Doubt and Reliable Evidence (Motion # 6, Doc. # 324). The Government filed an opposition on September 11, 2007, and Defendant filed a reply on September 14, 2007.

A.   Indictment

On October 12, 2006, the grand jury issued a First Superceding Indictment ("Indictment") against Defendant Naeem Williams ("Defendant Naeem" or "Defendant") and Defendant Delilah Williams ("Defendant Delilah"). The Indictment charges Defendant Naeem with three counts arising out of his role

in allegedly beating and killing his then five-year old daughter.  In Count 1, Defendant Naeem is charged alone with first degree felony murder, in violation of 18 U.S.C. §§ 7 and 1111.  The Indictment alleges that on July 16, 2005, Defendant Naeem, with malice aforethought, allegedly unlawfully killed a child, T.E.W., in the perpetration of child abuse, at Wheeler Army Airfield Military Housing.

Count 2 charges both Defendants Naeem and Delilah with first degree felony murder, in violation of 18 U.S.C. §§ 7 and 1111, in that they, with malice aforethought, allegedly unlawfully killed a child, T.E.W., as part of a "pattern and practice of assault and torture" against a child within the meaning of 18 U.S.C. § 1111(c).  The course of conduct allegedly occurred between at least December 13, 2004, and culminated in the death of T.E.W. on July 16, 2005.

The First Superceding Indictment also contains a Notice of Special Findings section, which alleges that Defendant Naeem was 18 years of age or older at the time of the offense.  The section also alleges the following three qualifying states of mind, and roles in the offense, with respect to Defendant Naeem, within the meaning of 18 U.S.C. § 3591(a), the Federal Death Penalty Act ("FDPA"): (1) intentional infliction of serious bodily injury that resulted in the death of T.E.W.; (2) intentional participation in an act, contemplating that the life of a person would be taken, and T.E.W. died as a result of the act; and (3) intentionally and

specifically engaging in an act of violence, knowing that the act created a grave risk of death to a person, such that participation in the act constituted a reckless disregard for human life, and that the victim T.E.W. died as a result of the act.

In addition, the notice section alleges the following two statutory aggravating factors within the meaning of 18 U.S.C. § 3592(c): (1) commission of the offense in an especially heinous, cruel and depraved manner in that it involved torture and serious physical abuse; and (2) that T.E.W. was particularly vulnerable due to her youth.

B.  Death Penalty Notice

On October 28, 2006, the Government filed an Amended Notice of Intent to Seek the Death Penalty Against Naeem Williams ("Death Penalty Notice"). In the Death Penalty Notice, the Government alleges the statutory prerequisite that at the time Defendant Naeem committed the offense, he was 18 years of age or older.

1.  Proportionality Factors

The Government alleges the following three gateway proportionality factors within the meaning of 18 U.S.C. § 3591(a): (1) Defendant Naeem intentionally inflicted serious bodily injury that resulted in the death of T.E.W.; (2) he intentionally participated in an act, contemplating that the life of a person would

be taken, other than a participant in the offense, and that T.E.W. died as a direct result of the act; and (3) Defendant Naeem intentionally and specifically engaged in an act of violence knowing that the act created a grave risk of death to a person (other than a participant) such that participation in the act constituted reckless disregard for human life and that T.E.W. died as a result of the act. These factors are known as "gateway" mental state factors, at least one of which the jury must find exists beyond a reasonable doubt as a prerequisite for finding that a defendant is eligible for the death penalty.

    2.    <u>Statutory Aggravating Factors</u>

The Government alleges the following two statutory aggravating factors in the Death Penalty Notice: (1) Defendant Naeem committed the offense in an especially heinous, cruel and depraved manner in that it involved torture and serious physical abuse to T.E.W., within the meaning of 18 U.S.C. § 3592(c)(6); and (2) T.E.W. was particularly vulnerable due to her youth within the meaning of 18 U.S.C. § 3592(c)(11). These factors are described as "statutory" because they are enumerated in the statute 18 U.S.C. § 3592.

    3.    <u>Non-Statutory Factors</u>

The Government alleges the following three non-statutory factors within the meaning of 18 U.S.C. §§ 3593(a) and (c): (1) after committing the final

act of physical abuse against T.E.W., Defendant Naeem intentionally waited before seeking medical attention, reducing any possibility that T.E.W. could have been medically treated and saved; (2) Defendant Naeem intentionally endeavored to impede the investigation by washing the victim's blood from the floors and walls of the scene of the crime, and by instructing his wife, Defendant Delilah, to give a false statement regarding the murder of the victim to the investigating law enforcement officers; and (3) Defendant Naeem caused injury, harm, and loss to T.W., by causing the death of her daughter, T.E.W.  These factors are not enumerated in the statute.

## DISCUSSION

At the outset, this Court notes that Defendant's arguments are difficult to discern.  Defendant provides numerous pages of case law, with little analysis to the facts of this case, and repeats arguments that are made more specifically in his other motions.  Although not entirely clear, based upon Defendant's reply brief, it appears that Defendant is arguing that the FDPA is facially unconstitutional because it does not comply with the Fifth Amendment Due Process and Indictment Clauses.  He also argues that the FDPA:  does not include procedural protections required by the Fifth, Sixth and Eighth Amendments; contains a standard for admission of evidence in the penalty hearing that is unconstitutional; provides for a

sentencing hearing that cannot be conducted in the absence of importing procedures required by Ring v. Arizona, 536 U.S. 584 (2002), Crawford v. Washington, 541 U.S. 36 (2004), and Sattazahn v. Pennsylvania, 537 U.S. 101 (2003); lacks specified burdens of proof; provides for the jury to find that the death penalty is 'justified,' which is void for vagueness; must be read with a patchwork of case law in mind such that the face of the Act is not actually applied in a death penalty prosecution and for that reason it is invalid; and it violates international law.

A.    Information Provided to the Grand Jury

Defendant's first argument is that the Fifth Amendment requires that the grand jury know that its finding could result in a death sentence, and that if the grand jury was not so informed, the Notice of Special Findings in the Indictment should be stricken.  The Government argues that although not required by law, the grand jury in this case was informed that the death sentence was at issue.  The grand jury was told that

> you might have read that the attorney general of the United States has authorized the death penalty.  That's to Naeem Williams, and we have so notified him and his attorney and the Court.  The attorney general has not authorized the death penalty against Delilah Williams, the stepmother.  Up till now, she's been charged just by a criminal complaint.

7

(Gov. Ex. 3 at 3.) Defendant asserts that this statement to the grand jury is insufficient because it does nothing to inform the grand jury that they were playing a role in a death penalty decision making process. Instead, the statement by the Government, Defendant argues, informed the grand jury that the issue of whether the death penalty would or could be pursued had been decided by the Attorney General, and did not leave the jurors with the impression that they would be deciding on factors that played a part in determining whether the death penalty would or could be pursued.

At a minimum, case law requires that the statutory elements of a crime, the requisite intent factors under 18 U.S.C. § 3591(a), and at least one statutory aggravating factor under 18 U.S.C. § 3592(c), must be proven to a jury beyond a reasonable doubt. See Ring v. Arizona, 536 U.S. 584, 609 (2002) (extending Apprendi v. New Jersey, 530 U.S. 466 (2000) to the death sentencing context). Circuit Courts have extended the Supreme Court's holding in Ring to require that the death-eligible factors be charged in the indictment. See United States v. Robinson, 367 F.3d 278, 284 (5th Cir. 2004) (finding that "Ring 's Sixth Amendment holding applies with equal force in the context of a Fifth Amendment Indictment Clause challenge, even though the Supreme Court has yet to hold as much in a capital case. As a result, the government is required to charge, by

8

indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty, and its failure to do so in this case is constitutional error."); United States v. Higgs, 353 F.3d 281, 298 (4th Cir. 2003) ("those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt."); United States v. Purkey, 428 F.3d 738, 750 (8th Cir. 2005).  This is because those death-eligible intent and aggravating factors are to be regarded as elements because they increase the maximum available punishment.  Robinson, 367 F.3d at 284; Purkey, 428 F.3d at 750 ("The indictment must charge at least one of the statutory aggravating factors that is ultimately found by the petit jury because that is what is required to elevate the available statutory maximum sentence from life imprisonment to death.") (internal quotation marks and citation omitted).

However, nothing in those cases suggests that the grand jury must also be informed that by returning the indictment the defendant may be subject to the death penalty.  Indeed, Defendant's argument has been soundly rejected by other courts, which have held that the grand jury does not need to be informed that the death penalty may be used.  See United States v. Diaz, No. CR 05-00167, 2007

9

WL 656831, at *6 (N.D. Cal. Feb. 28, 2007) (finding that even in a death penalty case, the grand jury need not be "informed of the potential punishment arising out of the special findings.") (citing United States v. Haynes, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003) (same)). The reason for rejecting Defendant's argument is

> [t]he grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual; rather, the grand jury check on prosecutorial power stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense. Moreover . . . Grand juries do not make findings or recommendations concerning punishment or sentencing and such considerations should not influence their decision. It is for the petit jury to make that determination. The role of the grand jury simply is to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary.

Diaz, 2007 WL 656831, at *6 (internal quotation marks and citation omitted).

Further, the model jury instruction, which was provided to this grand jury, instructs that the jurors should not be concerned about punishment in the event of conviction. This jury instruction has been upheld by the Ninth Circuit as constitutional because it uses the word "should," thereby allowing the possibility of considering punishment. United States v. Cortez-Rivera, 454 F.3d 1038, 1041 (9th Cir. 2006) (finding that the use of the word "should," in the instruction "does

not preclude the grand jury from considering punishment and is therefore constitutional.").

Moreover, in Purkey, the Eighth Circuit rejected arguments that are very similar to Defendant's arguments in this case. In that case, the defendant argued that the FDPA was "facially unconstitutional because it vests the prosecution with unilateral authority to seek the death penalty without ever taking the matter of whether the death penalty is justified to the grand jury." 428 F.3d at 748. The defendant also argued that his prosecution ran afoul of the indictment because the government failed to seek an indictment on "the issue of whether the aggravating factors sufficiently outweighed any mitigating factors to justify a sentence of death." Id. The court found the defendant's arguments meritless and held that

> it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause. In the words of the statute, it is a "consideration," 18 U.S.C. § 3593(e), – that is, the lens through which the jury must focus the facts that it has found to produce an individualized determination regarding "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." Id.

Id. at 750.

11

Here, the death-eligible intent factors and the statutory aggravating factors were set forth in the Indictment. By returning the Indictment, the grand jury found probable cause that Defendant committed the offenses, that threshold intent factors contained in Sections 3591(a)(2)(B), (C), and (D) were present, and that the statutory aggravating factors contained in Sections 3592(c)(6) and (11) existed. The grand jury was in fact informed that the Attorney General had authorized the death penalty. Thus, in this case, the grand jury fully realized that by returning the Indictment, Defendant could be sentenced to death. It is difficult to discern what more the grand jury could have been told that would allay Defendant's concerns. If Defendant is asking that the grand jury be told that it must engage in the weighing process of whether the defendant, if convicted, should be sentenced to death, prior to returning the indictment, then his argument is soundly rejected, as it was by the Eighth Circuit in the <u>Purkey</u> case.

B.    <u>Defendant's Facial Attack</u>

Defendant next argues that the FDPA is facially unconstitutional because it does not assign a burden of proof to the ultimate selection of decision concerning punishment, does not make the eligibility factors elements of the offense, and does not include a presumption of innocence.

The FDPA is not unconstitutional on its face. It requires, as the cases have held, that the threshold intent factors, the statutory aggravating factors, and the non-statutory aggravating factors be proven to the jury beyond a reasonable doubt. See 18 U.S.C. §§ 3591(a)(2) and 3593(c). Furthermore, the FDPA does not preclude the inclusion of the eligibility factors in a grand jury indictment. Purkey, 428 F.3d at 748-49 (rejecting the defendant's claim that the FDPA was unconstitutional on its face because nothing in the FDPA prohibited the government from submitting aggravating factors to the grand jury for inclusion in the indictment); United States v. Sampson, 486 F.3d 13, 21 (1st Cir. 2007) ("No provision of the FDPA prohibits a grand jury from considering those factors necessary for imposition of a death sentence. The statute simply is silent with respect to the function of the grand jury. It thus is not rendered facially unconstitutional by Ring.").

Defendant's presumption of innocence argument also fails. "The FDPA is not undermined by any lack of the presumption of innocence during the penalty phase." Diaz, 2007 WL 656831, at *8 (citing United States v. Cheever, 423 F. Supp. 2d 1181, 1196 (D. Kan. 2006)). This is because it is sufficient that at the sentencing phase, the jury is instructed that it is the government's burden

>to prove 'to a unanimous jury beyond a reasonable doubt everything required to make [a] defendant eligible for the death penalty, and everything required for the jury to return a recommendation of death, as contemplated by both the FDPA and the Constitution.' In addition, the jury will also be instructed that the defendant has no duty to prove anything, unless the defendant intends to prove mitigating factors by a preponderance of the evidence.

Id. Given the safeguards set forth in the FDPA regarding the government's burden of proof, the absence of an explicit provision regarding the presumption of innocence does not render the FDPA unconstitutional.

Defendant also argues that the FDPA is unconstitutional because it does not require adherence to a procedure that mandates reliable evidence at the sentencing phase and thus violates the Due Process and Confrontation Clauses. Defendant asserts that the Ring case and Sattazahn case require a new kind of calculus to be applied to the FDPA in order for it to be rescued from facial unconstitutionality.

Defendant's argument has recently been soundly rejected by the Ninth Circuit. In United States v. Mitchell, - - F.3d - - , No. 03-99010, 2007 WL 2482077, at *36 (9th Cir. Sept. 5, 2007), the defendant argued that the procedural protections of the FDPA were inadequate and violated the Due Process and Confrontation Clauses because the FDPA allowed evidence to be admitted at the

sentencing phase that would be inadmissible under the Federal Rules of Evidence. The Ninth Circuit held that "[t]he Rules of Evidence do not apply to sentencing proceedings." Id. The court explained that the Supreme Court has made it clear that in order to obtain the heightened reliability demanded by death penalty cases, more evidence on the presence of aggravating and mitigating factors, not less, should be admitted. Id. The court noted that the FDPA "provides a constitutionally sufficient procedural safeguard for evidentiary reliability" because it "allows the district judge to exclude evidence if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." Id. Accordingly, the FDPA's evidentiary standard is not facially unconstitutional.

C.     Defendant's Request that the Non-Statutory Factors Be Treated as Elements

This Court rejects Defendant's request that this Court rule that the non-statutory aggravating factors are to be treated as elements within the meaning of Ring and Sattazahn, and included in the Indictment. Indeed, this argument has already been rejected by several courts.

> For example, in Purkey, the Eighth Circuit held that
>
> [n]on-statutory aggravating factors do not increase the maximum punishment to which a defendant is subject. They are neither sufficient nor necessary under the FDPA

> for a sentence of death. Their purpose is merely to aid
> the sentencer in selecting the appropriate sentence from
> the available options, on the basis of the character of the
> [defendant] and the circumstances of the crime.

428 F.3d at 749-50 (internal quotation marks and citation omitted). Also, the Ninth Circuit recently found that the constitution does not require the government to charge and present the non-statutory aggravating factors to the grand jury because a "non-statutory aggravating factor by itself cannot trigger death eligibility." Mitchell, 2007 WL 2482077, at *36 (citation omitted). Therefore, as the non-statutory aggravating factors need not be charged in the indictment, they certainly need not be treated as an element within the meaning of Ring.

D.   Defendant's Remaining Arguments

Defendant asserts that the standard used in the FDPA that the jury must determine whether the sentence of death is "justified" is unconstitutionally vague and violates the Due Process Clause. This Court disagrees.

First, this Court notes that Defendant cites no authority supporting his claim. Second, due process requires that a statute be intelligible, defining a "core" of conduct that allows people to understand the consequences of their actions.

Forbes v. Napolitano, 236 F.3d 1009, 1011 (9th Cir. 2000). "Statutes need not be written with 'mathematical' precision, nor can they be thus written." Id. (citation omitted).

Here, the term "justify" is commonly known and used. Use of the word does not make the FDPA unconstitutionally vague. Furthermore, the parties can provide input on the exact definition of this term when this Court resolves jury instructions.

Defendant next argues that Ring and other cases require that the FDPA be rewritten or amended by Congress because it has resulted in him being subjected to a patchwork scheme. This Court rejects this argument. As noted by the First Circuit, courts have uniformly rejected the argument that Ring creates a conflict with the FDPA, and that "curing the problem would require the rewriting of the statute, which is a legislative function." Sampson, 486 F.3d at 21. The recognized mechanisms for complying with Ring do not amount to unconstitutional redrafting of the FDPA because Ring set forth a procedural, not substantive rule. Schriro v. Summerlin, 542 U.S. 348, 358 (2004) ("Ring announced a new procedural rule"). "Adhering to a court-crafted rule of criminal procedure when applying the FDPA does not constitute impermissible statutory

redrafting." Sampson, 486 F.3d at 22 (rejecting the defendant's argument that "the application of Ring to the FDPA requires impermissible judicial or executive redrafting of the statute.").

Defendant's argument that the FDPA violates international law has been foreclosed by the Ninth Circuit, as Defendant concedes. See Alvarez-Mendez v. Stock, 941 F.2d 956, 963 (9th Cir. 1991) (finding that the court is "bound by a properly enacted statute, provided it be constitutional, even if that statute violates international law."); see also United States v. Bin Laden, 126 F. Supp. 2d 290, 294 (S.D.N.Y. 2001) (the argument "that international law completely bars this nation's use of the death penalty-is unsupportable since the United States is not party to any treaty that prohibits capital punishment per se, and since total abolishment of capital punishment has not yet risen to the level of customary international law.").

Finally, Defendant argues that the Confrontation Clause applies at the sentencing phase for a death penalty trial and forbids the introduction of testimonial hearsay, such as Delilah's Plea Agreement, in violation of Crawford v. Washington, 541 U.S. 36 (2004). This Court finds that this argument is premature because it is not clear that the Government will attempt to use any testimonial hearsay evidence at the sentencing phase. Defendant may raise this argument

again at an appropriate time before the sentencing phase, if there is one. Accordingly, this Court DENIES Defendant's motion without prejudice with respect to this argument only.

In the alternative, if this Court does not find the FDPA to be unconstitutional, Defendant requests that this Court require the Government to provide more evidentiary detail to support the factors listed in the Death Penalty Notice. Defendant made those specific arguments in Motions 1, 3, 4, and 5, and this Court has addressed them in a separate order.

CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for Finding that the Death Penalty Act Is Unconstitutional and Motion to Strike FDPA Allegations from the Superceding Indictment and Amended Notice of Intent to Seek the Death Penalty (**Motion # 2**, Doc. # 309) **WITHOUT PREJUDICE**; and **DENIES** Defendant's Motion for Ruling that Non-Statutory Aggravating

Factors Must Be Considered Elements, Subject to Proof Beyond a Reasonable Doubt and Reliable Evidence (**Motion # 6**, Doc. # 324).

       IT IS SO ORDERED.

       DATED: Honolulu, Hawaii, October 2, 2007.

       David Alan Ezra
       United States District Judge

United States of America vs. Naeem J. Williams, et al., Cr. 06-00079 DAE-LEK; ORDER **DENYING** DEFENDANT NAEEM WILLIAMS'S MOTION FOR FINDING THAT THE DEATH PENALTY ACT IS UNCONSTITUTIONAL AND MOTION TO STRIKE FDPA ALLEGATIONS FROM THE SUPERCEDING INDICTMENT AND AMENDED NOTICE OF INTENT TO SEEK THE DEATH PENALTY (**MOTION # 2**) **WITHOUT PREJUDICE**; AND ORDER **DENYING** DEFENDANT'S MOTION FOR RULING THAT NON-STATUTORY AGGRAVATING FACTORS MUST BE CONSIDERED ELEMENTS, SUBJECT TO PROOF BEYOND A REASONABLE DOUBT AND RELIABLE EVIDENCE (**MOTION # 6**)