IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | CRIM. NO. 06-00079 JMS/KSC |
| ) | |
| Plaintiff,     ) | ORDER DENYING DEFENDANT'S |
| ) | RENEWED MOTION TO EXCLUDE |
| vs.     ) | EXPERT TESTIMONY CONCERNING |
| ) | THE IDENTIFICATION OF |
| NAEEM J. WILLIAMS,     ) | BIOLOGICAL MATERIAL [DNA AND |
| ) | SEROLOGY], AND REQUEST FOR |
| Defendant.     ) | DISCOVERY, DOC. NO. 2043, ON |
| ) | REMAINING ISSUE |
| _____ ) | |

**ORDER DENYING DEFENDANT'S RENEWED MOTION TO EXCLUDE EXPERT TESTIMONY CONCERNING THE IDENTIFICATION OF BIOLOGICAL MATERIAL [DNA AND SEROLOGY], AND REQUEST FOR DISCOVERY, DOC. NO. 2043, ON REMAINING ISSUE**

**I. INTRODUCTION**

Defendant Naeem Williams ("Defendant") is accused of, among other things, unlawfully killing five-year-old Talia Williams ("Talia") in violation of 18 U.S.C. §§ 2, 7(3), and 1111(a) & (b).  At the upcoming trial, the government plans to present expert testimony that, to a reasonable degree of scientific certainty, several blood samples found in Defendant's residence where he and Talia lived are from Talia.  This conclusion is based on the results of PCR STR DNA testing, which found that a DNA sample from Talia matched the blood samples at each of the thirteen STR loci tested.

Defendant's May 28, 2013 Renewed Motion to Exclude Expert Testimony Concerning the Identification of Biological Material [DNA and Serology] ("Motion to Exclude Expert Testimony"), Doc. No. 2043-1, raises several arguments that this PCR STR DNA methodology runs afoul of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  On August 26, 2013, the court entered its Preliminary Order Denying Defendant's Motion to Exclude Expert Testimony on all issues except for one regarding this PCR STR DNA testing.  Doc. No. 2136.  The remaining issue is whether the expert report by Anthony J. Onorato (the "Onorato Report") failed to take into account the possibility of primer binding site mutations in performing PCR STR DNA comparative analyses such that the Onorato Report's identification of Talia as the source of the samples is inadmissible.  Based on the following, the court DENIES Defendant's Motion to Exclude Expert Testimony on this remaining issue.

## II.  ISSUE PRESENTED

The Onorato Report outlines that a method of testing known as PCR STR DNA testing was employed to determine the source of DNA from samples collected from Defendant's and Talia's residence.[1]  *See* Doc. No. 1051-2.  To that

---

[1] The court previously outlined the scientific evidence and standard of review in detail in its August 26, 2013 Order, and does not repeat it here.  Rather, the court focuses on only those facts necessary to adequately frame the remaining issue.

end, the Onorato Report states that DNA was isolated from a number of samples taken from Defendant's residence, and "subjected to DNA typing using [PCR] at the . . . thirteen (13) different short tandem repeat (STR) loci of the AmpℓSTR® Profiler Plus™ *ID* and AmpℓSTR® Cofiler™ Amplification Kits." Doc. No. 1051-2 at 3. Based on the results, the Onorato Report concludes that to a reasonable degree of scientific certainty, Talia is the source of the DNA for several samples. *Id.*

Defendant initially argued that the Onorato Report failed to properly take into account the possibility of primer binding site mutations in performing PCR STR DNA comparative analyses between samples from Talia and those taken from the residence. Specifically, PCR STR DNA analysis was performed using kits (*i.e.*, boxes containing all the necessary chemicals and primers) manufactured by Applied Biosciences. *See* Doc. No. 2068-1, Heather LaSalle Decl. at 16. The primers in these kits are pieces of DNA that assist in starting the PCR process. *Id.* These primers are specific to Applied Biosystems, and the other major manufacturer of PCR STR kits, Promega, uses different primers (*i.e.*, the particular DNA sequence of the primer differs). *Id.* at 17. Given these differences in primers between the kits, the STR profile obtained from a Promega kit may differ from that from an Applied Biosystems kit, and an occurrence called "allelic dropout" may

occur. Defendant argued that these differing results between the two manufacturers injects uncertainty -- Defendant reasoned that "if one lab tested the evidence using a Promega kit and the results were inculpatory, and then another lab retested the same evidence with [an] Applied Biosystems Elmer kit and the results were exculpatory, then one expert would have to testify that both kits were reliable and generally accepted." Doc. No. 2043-1, Mot. at 38-39.

In opposition, the government asserted that the FBI uses Applied Biosystems kits for all of its PCR STR DNA typing, Doc. No. 2068-1, LaSalle Decl. at 17, such that there is no possibility of getting differing results based on a change in the kit used. As Heather LaSalle, FBI Forensic Examiner for the Nuclear DNA Unit, explains, "[a] good analogy for this scenario is that if Applied Biosystems PCR STR DNA kits are like apples and Promega PCR STR DNA kits are like oranges [then] for this case the FBI lab only compared apples to apples." *Id.*

In reply, Defendant asserted, in a one-sentence argument, that the government's explanation lacks merit due to *People v. Pizarro*, 158 Cal. Rptr. 3d 55 (Cal. App. 2013), which issued only a week before Defendant filed his Motion to Exclude Expert Testimony, and which raised concerns of allelic drop-out as opposed to the problem of primer site binding mutations caused by differing kits.

4

Because the parties did not address *Pizarro* in any meaningful way, the court required supplemental briefing addressing: (1) whether *Pizarro's* concerns regarding allelic drop-out are viable and applicable in this action, and (2) if *Pizarro's* concerns do apply to this action, how such concerns figure into the *Daubert* analysis. Doc. No. 2135. The government submitted a Supplemental Opposition on September 23, 2013. Doc. No. 2178. In the meantime, *Pizarro* was depublished on September 18, 2013. On October 11, 2013, the court provided the parties a copy of the letter requesting depublication, which is a public record. Doc. No. 2201. Defendant submitted a Supplemental Reply on October 14, 2013. Doc. No. 2202.

### III. **DISCUSSION**

In *Pizarro*, the defendant challenged the prosecution's evidence that PCR STR DNA testing established that the defendant's DNA matched all thirteen loci of a sample found on a rape and murder victim, raising many of the arguments Defendant raises in this action. *See* 158 Cal. Rptr. 3d at 90. The prosecution's expert, Steven Meyers, testified that if PCR amplification does not occur equally at both alleles of a sample (usually due to a sequence variation at one allele), the peak heights will be different, and in extreme cases an allele may "drop out." *Id.* When challenged on cross-examination, Myers acknowledged the studies demonstrating

5

that ABI kits and Promega kits may produce different null allele results, and explained that this difference is not an issue so long as the same kit is used because the results will be internally consistent within a kit. *Id.* at 91. Further, although a peak height imbalance in the resulting electropherogram may indicate that allelic dropout has occurred, Myers testified that there was no such indication in this case. *Id.* at 97. *Pizarro* determined that the trial court did not abuse its discretion in admitting the DNA evidence under California's three-prong test for admission of scientific evidence as outlined in *People v. Kelly*, 130 Cal. Rptr. 144 (Cal. 1976), -- that is, "the trial court had no reason to find that Myers failed to follow correct scientific procedure." *Id.* at 98.

Despite affirming the trial court and recognizing that it was not a scientific body, *Pizarro* nonetheless took the opportunity to express its opinion that "allelic dropout has the potential to falsely incriminate an innocent defendant." *Id. Pizarro* explained that the issue of allelic dropout is not an issue when the same primers are used and the two samples ultimately come from the same person -- even if allelic dropout occurs, both samples will display this phenomena and a match will occur because the DNA is the same. *Id.* Where the two samples at issue come from different people, however, *Pizarro* expressed concern that allelic dropout in one sample may lead to a false match that falsely incriminates an

innocent defendant. *Id.* at 101. For example, if the perpetrator is a heterozygous 14, 19 at a particular allele and the 19 is a mutant allele which drops out, the genotype will appear as a homozygous 14, 14. *Id.* If the defendant is a homozygous 14, 14, however, he will be considered a match at this allele. Although *Pizarro* recognized that "[w]e have not found reference to this scenario in the literature," it asserted that "[i]f our conclusions are accurate, the widely held idea that allelic dropout cannot cause false results in a criminal case as long as the same primers/kit are used on both the defendant's and the perpetrator's DNA samples is a very serious falsehood based on the improper assumption that the defendant is guilty." *Id. Pizarro* therefore suggested the scientific community consider null allele recovery where the analyst observes a homozygous genotype that raises the suspicion that a second allele has dropped out. *Id.* at 104-05.

      For several reasons, the court rejects that *Pizarro* supports Defendant's argument that the PCR STR DNA testing should be excluded pursuant to *Daubert*. As an initial matter, *Pizarro* was recently depublished at the California Attorney General's request. *See* Doc. No. 2201. The California Attorney General requested that the California Supreme Court depublish *Pizarro*, a California Court of Appeal, Fifth District opinion, because its discussion regarding null alleles is dicta, is based solely on the court's own conjecture, and is not

7

supported by scientific evidence.  *Id.*  Although the California Supreme Court did not give a reason for depublishing, *Pizarro* is nonetheless depublished and therefore not precedent under California law and cannot be cited in California courts except in narrow circumstances.  *See* Cal. Ct. R. 8.1115; *Farmers Ins. Exchange v. Superior Court*, 159 Cal. Rptr. 3d 580, 591 (Cal. App. 2013) ("Without precedential value, a depublished opinion is no longer part of the law and thus ceases to exist.").  On this basis alone, the court finds that *Pizarro* should be treated, at best, with skepticism.

        Second, even if *Pizarro's* dicta was published and/or is citable before this court,[2] it is not persuasive on the issue presented here -- *i.e.*, whether the PCR STR DNA testing in this action runs afoul of *Daubert*.  *Pizarro* discussed admission of scientific evidence under California state law, not *Daubert*.  And even if there are parallels between California law and *Daubert*, *Pizarro* affirmed the trial court's admission of the PCR STR DNA testing on the basis that it is a well-

---

[2] Despite California Rule of Court 8.1115, Defendant correctly points out that the Ninth Circuit has on several occasions relied upon unpublished California state opinions.  *See, e.g.*, *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1008 n.2 (9th Cir. 2012) (relying upon unpublished cases to "lend support" for proposition that a published case "accurately represents California law" (citing *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003))).  Here, Defendant seeks to rely on *Pizarro's* state-law dicta, a matter that does not "lend support" to the *Daubert* issue before the court.

accepted methodology in identifying the source of DNA samples and nothing called into question this methodology. Thus, if anything, *Pizarro supports* admission of the PCR STR DNA testing, with its concerns about null alleles (to the extent such concerns are supportable) forming the basis of cross-examination and/or rebuttal testimony.

Finally, turning to the substance of *Pizarro's* concerns, it appears they are based on a misunderstanding regarding the science at issue. The example *Pizarro* provides of a null allele causing a false match ignores that PCR DNA STR testing involves multiple loci. As LaSalle explains, "[t]he entire 13 locus profile is evaluated by the DNA examiner during interpretation of a DNA profile," and [t]he potential of having two profiles match completely except for one of two alleles, at one locus (due to a mutation in the primer binding region) is highly improbable." Doc. No. 2178-1, LaSalle Decl. ¶ 11. In fact,

> The chances of having two profiles that match at twelve loci, but differ at the thirteenth locus due to one allele, is as improbable as two people matching at all thirteen STR loci with only sequence difference in their DNA. Scientifically, these two scenarios are identical, the chances of a null allele difference being the only distinction between two DNA profiles is exceedingly rare.

*Id.* ¶ 4. Faced with such result, "a DNA examiner would recognize this as an uncommon event and would further examine these profiles in their entirety,

examining possible scenarios," including whether different kits were used, the samples came from close genetic relatives, or that the quality of DNA impacted the results.[3]  *Id.* ¶¶ 6-7.  Indeed, the existence of null alleles is a known phenomenon, which "is taken into account on a case-by-case and profile-by-profile basis and is managed according to validated methodology, standard operating procedures, [Scientific Working Group on DNA Analysis Methods] guidelines and the FBI Quality Assurance Standards."  *Id.* ¶ 13.  LaSalle explains that in comparison, *Pizarro's* proposal for null allele recovery where an analyst observes a homozygous genotype raising suspicions of allelic dropout would be difficult for a forensic laboratory to perform reliably according to accepted scientific methodology.  *Id.*

In sum, LaSalle exposes significant issues with *Pizarro's* assertions that allelic dropout may cause improper identification.  And this criticism of *Pizarro* is only highlighted by the facts that (1) *Pizarro* recognized it was not a scientific body; (2) *Pizarro* presented its concerns without any scientific evidence expressing these same concerns; and (3) Defendant in this action only parrots *Pizarro's* concerns without presenting any expert evidence of his own supporting

---

[3] For purposes of this action, none of these is a possible scenario in this action -- the same kit was used, Talia's parents were typed and excluded, and the allelic dropout was guarded against by ensuring that peak levels met relevant standards.  *See* Doc. No. 2178-1, LaSalle Decl. ¶ 7.

that *Pizarro* was justified with its these concerns.  Rather, the evidence presented establishes that PCR STR DNA analysis is a well-accepted science that has been researched and validated by multiple sources.

Thus, at most, Defendant's concerns of allelic dropout go to the weight of the evidence, not its admissibility.  The court therefore finds that the PCR STR DNA analysis passes *Daubert* scrutiny.

## IV.  CONCLUSION

For these reasons, the court DENIES Defendant's Renewed Motion to Exclude Expert Testimony Concerning the Identification of Biological Material [DNA and Serology], Doc. No. 2043, as to the remaining issue.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 21, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Williams*, Cr. No. 06-00079 JMS/KSC, Order Denying Defendant's Renewed Motion to Exclude Expert Testimony Concerning the Identification of Biological Material [DNA and Serology], and Request for Discovery, Doc. No. 2043, on Remaining Issue