IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Crim. No. 06-00079 JMS-KSC |
| ) | |
| Plaintiff, ) | ORDER REGARDING SUFFICIENCY |
| ) | OF COUNT ONE OF THE SECOND |
| vs. ) | SUPERCEDING INDICTMENT, |
| ) | RAISED IN DEFENDANT'S MARCH |
| NAEEM J. WILLIAMS, ) | 18, 2014 TRIAL MEMORANDUM, |
| ) | DOC. NO. 2452 |
| Defendant. ) | |
| _____ ) | |

**ORDER REGARDING SUFFICIENCY OF COUNT ONE OF THE SECOND SUPERCEDING INDICTMENT, RAISED IN DEFENDANT'S MARCH 18, 2014 TRIAL MEMORANDUM, DOC. NO. 2452**

**I. INTRODUCTION**

In this capital murder case, Defendant Naeem Williams filed a Trial Memorandum on March 18, 2014, objecting to certain testimony of Dr. Sharon Cooper and Dr. Kanthi De Alwis, who are proposed government expert witnesses. Doc. No. 2452.¹ Defendant's Trial Memorandum, however, does more than

---

¹ The court construes Defendant's Trial Memorandum of March 18, 2014 as an Objection in the nature of a motion in limine, seeking to preclude certain testimony and opinions of Drs. Cooper and De Alwis. At a March 20, 2014 hearing, the court overruled the Objection, and allowed Drs. Cooper and De Alwis to testify, subject to concerns the court addressed under Federal Rules of Evidence ("FRE") 704(b) and 403. (Although the title of the Trial Memorandum refers to both Dr. Cooper and Dr. De Alwis, the Objection was confined to Dr. Cooper.)

Dr. Cooper is a board-certified pediatrician who is recognized as an expert "on child abuse-related medicine," among other areas. *See* Doc. No. 1606, "Order Regarding January

(continued...)

challenge expert testimony -- it raises a more fundamental issue, challenging the sufficiency of Count One of the Second Superceding Indictment (the "Indictment"). The court denied that legal challenge in open court on March 20, 2014. This Order explains the court's reasons for rejecting Defendant's argument, and for upholding the sufficiency of the Indictment.

## II. DISCUSSION

### A.     The Indictment and Corresponding Statutory Provisions

Among other Counts, the Indictment charges Defendant with two capital-eligible Counts of felony murder arising out of Defendant's role in allegedly killing his five-year-old daughter. Specifically, Count One charges Defendant with first degree felony murder, in violation of 18 U.S.C. §§ 7 & 1111, as follows:

---

[1](...continued)
2011 Through March 2011 *Daubert* hearing on Cause of Death" (the "April 1, 2011 Order") at 29.

The April 1, 2011 Order found Dr. Cooper's proffered testimony and opinions to be reliable and relevant, both as to (1) the cause of Talia Williams' death, and (2) the pain that a child may suffer. *Id.* at 32. The court specifically reasoned, in part, that the testimony is relevant because "the Government must prove beyond a reasonable doubt that Talia died after suffering 'extreme physical pain' for the jury to find Defendant guilty as to Count 1," and that "[a]s to Count 2, the Government must prove beyond a reasonable doubt that Talia died from a pattern or practice of assault or 'the prolonged mental harm caused by or resulting from the intentional infliction or threatened infliction of severe physical pain or suffering.'" *Id.* at 32-33. Despite the April 1, 2011 Order (and others like it issued before 2011), Defendant now argues that expert testimony regarding whether Talia would have suffered "serious bodily injury" or "severe physical pain" is irrelevant because the operative Indictment does not properly allege "serious bodily injury" or "severe physical pain."

> On or about July 16, 2005 . . . the defendant NAEEM J. WILLIAMS, with malice aforethought, did unlawfully kill Talia Williams, a "child," in the perpetration of "child abuse," as those terms are defined by Title 18 United States Code, Section 1111(c).
> All in violation of Title 18, United States Code, sections 7(3) and 1111(a) & (b).

Doc. No. 1004, Indictment at 2. Count Two charges Defendant with first degree felony murder, and aiding and abetting first degree felony murder, in violation of 18 U.S.C. §§ 7 & 1111, as follows:

> From beginning on a date unknown to the Grand Jury, but at some time after December 13, 2004, and culminating in the death of Talia Williams on July 16, 2005 . . . the defendant NAEEM J. WILLIAMS and Delilah Williams (who is not a defendant in this Second Superceding Indictment) with malice aforethought, did unlawfully kill, and did aid and abet each other in the killing of Talia Williams, a "child," in the perpetration of part of a "pattern and practice of assault and torture" against a "child," as those terms are defined by Title 18, United States Code, Section 1111(c).
> All in violation of Title 18, United States Code, Sections 2, 7(3) and 1111(a) & (b).

*Id.* at 3.

Thus, the Indictment charges two violations of 18 U.S.C. § 1111, which provides, in relevant part:

> (a) *Murder is the unlawful killing of a human being* with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing;

3

>*or* committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, *child abuse*, burglary, or robbery; *or perpetrated as part of a pattern or practice of assault or torture against a child* or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree. [Emphases added]
>. . . .
>
>>(c) For purposes of this section --
>>. . . .
>>>(2) the term "child" means a person who has not attained the age of 18 years and is --
>>>
>>>>(A) under the perpetrator's care or control; or
>>>>(B) at least six years younger than the perpetrator;
>>>
>>>(3) the term "child abuse" means intentionally or knowingly causing death or serious bodily injury to a child;
>>>
>>>(4) the term "pattern or practice of assault or torture" means assault or torture engaged in on at least two occasions;
>>>
>>>(5) the term "serious bodily injury" has the meaning set forth in section 1365; and
>>>
>>>(6) the term "torture" means conduct, whether or not committed under the color of law, that otherwise satisfies the definition set forth in section 2340(1).

In turn, 18 U.S.C. § 1365(h) provides in relevant part:

(3) the term "serious bodily injury" means bodily injury which involves --

    (A) a substantial risk of death;
    (B) extreme physical pain;
    (C) protracted and obvious disfigurement; or
    (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty; and

(4) the term "bodily injury" means --

    (A) a cut, abrasion, bruise, burn, or disfigurement;
    (B) physical pain;
    (C) illness;
    (D) impairment of the function of a bodily member, organ, or mental faculty; or
    (E) any other injury to the body, no matter how temporary.

And 18 U.S.C. § 2340 provides:

(1) "torture" means an act committed by a person . . . specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

(2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from --

    (A) the intentional infliction or threatened infliction of severe physical pain or suffering[.]

## B.	Defendant's Primary Argument[2]

Applying the statutory terms, Defendant reads § 1111(c)(3) to mean there are two distinct types of "child abuse" -- the first type is "intentionally or knowingly causing death," and the second type is "intentionally or knowingly causing serious bodily injury."  So construed, Defendant contends that the Indictment charges only the first type (intentionally or knowingly causing death). Thus, Defendant argues that the government -- having indicted Defendant on the first type -- cannot now pursue the second type of child abuse (serious bodily injury).

Defendant further argues that allowing the government to pursue this second type of child abuse (serious bodily injury) would amount to an unconstitutional constructive amendment of the Indictment.  *See* Doc. No. 2452, Trial Brief at 7 (citing *United States v. Shipsey*, 190 F.3d 1081, 1085-86 (9th Cir. 1999) ("The Fifth Amendment's Grand Jury Clause endows defendants who are charged with felonies with a substantial right to be tried only on the charges set forth in an indictment by a grand jury."))[3]

---

[2] As noted above, at a March 20, 2014 hearing, the court addressed Defendant's other arguments for excluding Dr. Cooper's testimony under FRE 403 and 704(b), and under Federal Rule of Criminal Procedure 16.

[3] At the March 20, 2014 hearing, Defendant admitted that the Indictment "is not subject
(continued...)

And because (according to Defendant) the Indictment does not charge "serious bodily injury" child abuse in Count One, Defendant concludes that expert testimony from Dr. Cooper on "extreme physical pain" (as provided in 18 U.S.C. § 1365(h)(3)(B)'s definition of "serious bodily injury") is irrelevant and should be excluded.[4]

---

[3](...continued) to a challenge . . . because it does sufficiently allege the death aspect of child abuse." Doc. No. 2486, Tr. Mar. 20, 2014 at 7-6. He explained, however, that he was focusing on a constructive amendment argument under *Shipsey*. *Id.* at 7-7 ("It's not a notice issue, but a Fifth Amendment grand jury issue."). Ultimately, then, Defendant is challenging the Indictment. *See id.* (arguing that "the government allege[s] the statutory language, but then they factually allege that the victim was killed, not that she suffered great bodily injury.").

[4] Aside from Count One, Dr. Cooper's testimony is also relevant under Count Two. Count Two allows the government to prove the killing occurred "in the perpetration of" "a pattern and practice of assault and *torture*" against a child (emphasis added). 18 U.S.C. § 1111(c)(4). And, under § 1111(c)(6), "torture" means "*conduct*, whether or not committed under the color of law, that otherwise satisfies the definition set forth in section 2340(1)" (emphasis added). In turn, § 2340(1) defines torture as "an act committed by a person . . . specifically intended to inflict *severe physical or mental pain or suffering*," [(emphasis added)] where § 2340(2)(A) then further defines "severe mental pain or suffering" as "prolonged mental harm caused by or resulting from . . . the intentional infliction or threatened infliction of severe physical pain or suffering."

Thus, under Count Two, Dr. Cooper's testimony is relevant to demonstrate, at a minimum, that Talia died from "a pattern or practice of assault or 'the prolonged mental harm caused by or resulting from the intentional infliction or threatened infliction of severe physical pain or suffering.'" Doc. No. 1606, April 1, 2011 Order at 32-33. And from that testimony, the jury could also infer that Defendant had sufficient *mens rea* -- an intent "to inflict severe physical or mental pain or suffering." *See United States v. Hayat*, 710 F.3d 875, 901 (9th Cir. 2013) ("Under our precedent, Rule 704(b) does not bar testimony supporting an inference or conclusion that a defendant does or does not have the requisite mental state, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.") (citations and internal quotation marks omitted).

**C.    Defendant's Arguments Fail**

*1.    The Indictment Is Sufficient*

Initially, Count One of the Indictment does not limit the government only to the first type of child abuse ("intentionally or knowingly causing death"). Rather, Count One alleges felony murder based on a violation of "sections 7(3) and 1111(a) & (b)," where § 1111(a) includes "child abuse" as one of many specific felonies constituting possible predicates.[5] Count One then describes the elements "child" and "child abuse" by incorporating the meanings set forth in the next part of the felony murder statute -- "as those terms are defined by Title 18 United States Code, Section 1111(c)." And because § 1111(c)(3) describes two types of "child abuse," the indictment charges *both* theories. That is, § 1111(c)(3) describes two theories of "child abuse" as alternate ways of proving the *same* crime. It does not define two distinct crimes.

In support of the notion that the language of the Indictment specifically *charges* only one of the theories of child abuse, Defendant points out that Count One alleges that Defendant "did *unlawfully kill* Talia Williams . . . in the perpetration of 'child abuse[.]'" Doc. No. 1004, Indictment at 2. Defendant believes that this language ("unlawfully kill") means the Indictment is based only

---

[5] Sections 7(3) and 1111(b) are jurisdictional provisions.

on the first theory of child abuse ("intentionally or knowingly causing death").  *See* Doc. No. 2452, Trial Memo. at 7 ("Here, although [§ 1111(c)(3)] defines 'child abuse' as 'intentionally or knowingly causing death *or* serious bodily injury to a child', the indictment in this case clearly sets forth in Count 1 that Mr. Williams 'unlawfully kill[ed] Talia Williams . . . in the perpetration of 'child abuse'.  There is simply no allegation that he caused 'serious bodily injury' and thus no need or relevancy to proving that the victim suffered 'extreme physical pain' within the meaning of Section 1365.").                .

        But Defendant fails to recognize the obvious -- an "unlawful killing of a human being" is a necessary element of *every* felony murder under § 1111(a) (whether based on child abuse, a pattern or practice of assault and torture, or any *other* statutory felony in § 1111(a)).  Alleging an "unlawful killing" is not an allegation of a specific type of child abuse, but is an allegation of an otherwise necessary element of felony murder under § 1111(a).

        Moreover, there is no requirement that an indictment specifically choose among two alternative theories of a single crime.  "An indictment must provide the essential facts necessary to apprise a defendant of the crime charged; *it need not specify the theories or evidence upon which the government will rely to prove those facts*."  *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir.

1993) (citing *United States v. Jenkins*, 884 F.2d 433, 438-39 (9th Cir. 1989) (emphasis added)).  An indictment is proper if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged.").  "An indictment . . . need only set forth the essential facts necessary to inform the defendant of what crime [he] is charged; it need not explain all factual evidence to be proved at trial."  *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993).

///

///

///

///

///

///

///

Furthermore, especially when considering an indictment as a whole,[6] Ninth Circuit caselaw clearly holds that it is sufficient for an indictment to refer to a specific statutory provision to allege the essential elements of a crime. *See, e.g.*, *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (upholding indictment that tracked the statutory language of the money laundering statute, and reasoning that "the government need not [also] allege all the elements" of the underlying offense, where the indictment provided detailed factual allegations describing the basis for the charges); *Echavarria-Olarte v. Reno*, 35 F.3d 395, 398 (9th Cir. 1994) (rejecting the argument that a conspiracy indictment was insufficient for failure to allege the "substantive offense statute which was the object of the alleged conspiracy," and upholding the indictment, which cited only to "offenses within this subchapter," but which was accompanied by facts describing the specific offenses); *United States v. Lopez-Alvarez*, 970 F.2d 583,

---

[6] "[A]n indictment 'should be read *in its entirety*, construed according to common sense, and interpreted to include facts which are necessarily implied.'" *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)) (emphasis added). That is, "[t]he indictment must be 'read as a whole' and construed according to common sense." *Echavarria-Olarte v. Reno*, 35 F.3d 395, 397 (9th Cir. 1994) (citation omitted). "[I]f an indictment contains an error, there must be some evidence that the error misled the defendant to the defendant's prejudice." *Berger*, 473 F.3d at 1103 (citing Fed. R. Crim. P. 7(c)[(2)] (referring to "citation" errors)). "We consider an indictment sufficient if, *when considered in its entirety*, it adequately informs the defendant of the charges against her such that she may prepare a defense and invoke the double jeopardy clause when appropriate." *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting *United States v. Whited*, 311 F.3d 259, 262 (3d Cir. 2002)).

596-97 (9th Cir. 1992) (indicating that a § 1111 murder indictment was sufficient "[b]ecause it stated the approximate date of the killing and the name of the victim," "enabled the defendant to determine whether double jeopardy concerns were implicated," and "set forth the elements of the offense charged by stating that the count was brought under 18 U.S.C. § 1111(a)"); *United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987) (reiterating that use of an information "employing the statutory language alone . . . is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished").

Other circuits agree. *See, e.g.*, *United States v. Fernandez*, 559 F.3d 303, 328 (5th Cir. 2009) (upholding a murder indictment that did not specify the manner and means of the offense, reasoning in part that "[t]he government may even allege that the 'means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means'") (quoting Fed. R. Crim. P. 7(c)(1)); *United States v. Bedonie*, 913 F.3d 782, 788 (10th Cir. 1990) (finding it "extremely significant that § 1111(a) enumerates eleven separate crimes within its 'felony-murder' provision," and holding that "in prosecuting a defendant for first degree murder under the 'felony-murder' provision of § 1111(a), the predicate crime shall be defined by reference to the

appropriate federal statute -- in this case the federal arson statute, 18 U.S.C. § 81");

*United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998) ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge."); *United States v. McGarity*, 669 F.3d 1218, 1271-72 (11th Cir. 2012) (citing numerous cases holding that "an indictment referring to the statute upon which the charge is based adequately informs the defendant of the charge") (Hull, J., concurring in part and dissenting in part).

As explained above, the Indictment here comports with these standards -- it provides all the elements of the felony murder counts by specifying the elements under § 1111(a). It refers to the specific underlying predicate felonies "as defined" in § 1111(c)(3) ("child abuse") and § 1111(c)(4) ("pattern and practice of assault and torture").[7] There is no missing element.

---

[7] Count One also alleges a specific date of the killing (July 16, 2005). The Indictment includes a Notice of Special Findings section, alleging mental state eligibility factors and statutory aggravating factors under 18 U.S.C. §§ 3591(a) & 3592(c). In particular, it alleges as to Counts One and Two, that Defendant:

    a.    intentionally inflicted serious bodily injury that resulted in the death of Talia Williams (18 U.S.C. § 3591(a)(2)(B));

    b.    intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless

(continued...)

And for that reason (because the Indictment charges a crime -- child abuse felony murder -- with alternate theories), there is no constructive amendment where the government later chose to pursue only one theory. *See, e.g.*, *United States v. Miller*, 471 U.S. 130, 140 (1985) (rejecting a claim of constructive amendment where the complaint was "not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary"), *and id*. at 144 (rejecting the argument that "it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it"); *United States v. Wilbur*, 674 F.3d 1160, 1178 (9th Cir. 2012) (concluding that there was no impermissible constructive amendment of the indictment, where "the conviction is narrower, rather than broader, than the indictment").

---

[7](...continued)
>    disregard for human life and the victim, Talia Williams, died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));
>
> c.  committed the offense charged in the indictment in an especially heinous, cruel, and depraved manner in that it involved torture and serious physical abuse to the victim, Talia Williams (18 U.S.C. § 3592(c)(6)); and
>
> d.  committed the offense charged in the indictment against a victim, Talia Williams, who was particularly vulnerable due to her youth (18 U.S.C. § 3592(c)(11)).

Doc. No. 1004, Indictment at 4.

### *2.     There Is No Prejudice*

Furthermore, Defendant was neither misled nor suffered any prejudice (even if the Indictment could somehow be interpreted to contain an error -- such as referring to "child abuse" in "§ 1111(c)," rather than "§ 1111(c)(3);" or not citing to a specific theory of child abuse in § 1111(c)(3)).

Defendant has had more than ample notice. The government informed Judge David A. Ezra[8] (and Defendant) *almost six years ago* that it was proceeding only on the second child abuse theory ("serious bodily injury"). *See* Doc. No. 558-2, Gov't's April 22, 2008 Memo. of Law at 17 ("Indeed, our primary theory [in Count One] is that the defendant committed child abuse by knowingly causing 'extreme physical pain,' see section 1365(h)(3)(B), by hitting Talia so hard in the chest that she fell backwards and hit her head on the floor so hard that she later died from the impact."), *and* at 18 ("[T]he government's primary theory as to Count 1 is based upon § 1365(h)(3)(**B)** (that the defendant intended to inflict extreme physical pain) and not section 1365(h)(3)(**A)**.").

And the court and the parties accepted and relied on the government's representation. *See* Doc. No. 596, Order of June 5, 2008 at 7 ("At the hearing, the

---

[8] Judge Ezra previously presided over this case, which was reassigned on March 2, 2013 (after Judge Ezra was designated to serve in the Western District of Texas upon taking Senior status). Doc. No. 1966.

15

Government narrowed its theory of the case and stated that it will not attempt to prove that Defendant intentionally or knowingly caused death, but instead would attempt to prove that Defendant had the intent to inflict serious bodily injury on [Talia]. The Government further limited its theory of the case at the hearing and stated that it would not attempt to prove the definition of bodily injury which involves 'a substantial risk of death,' but instead would focus on the definition of 'extreme physical pain.'"); *and id.* at 9-10 ("Having found that the Government must establish that Defendant intended to inflict serious bodily injury to establish the underlying felony, an element which is uncontested, this Court must determine whether Defendant should be allowed to present expert testimony regarding the 'foreseeability' of inflicting serious bodily injury.").

The court repeated these facts in a later Order. *See* Doc. No. 780, Order of February 20, 2009 at 2 ("Count 1 charges Defendant with committing murder in the perpetration of child abuse. In order to convict Defendant under Count 1, the Government must prove beyond a reasonable doubt that Defendant intentionally or knowingly caused death or serious bodily injury to [Talia]. *As noted in this Court's order of June 5, 2008, the Government has chosen to only pursue one definition for causing 'serious bodily injury,' namely, 'extreme physical pain.' (See Doc. # 596, at 7.)*") (emphasis added).

Moreover, absolutely nothing indicates the government changed its theory in the February 4, 2009 Second Superceding Indictment.[9] The government's theory as to Count One has remained the same throughout this action, at least since April 2008. Indeed, the court again stated in the April 1, 2011 Order that "the Government must prove beyond a reasonable doubt that Talia died after suffering 'extreme physical pain' for the jury to find Defendant guilty as to Count 1." Doc. No. 1606, April 1, 2011 Order at 32.[10]

And so, rather than any hint of prejudice, Defendant's challenge to the Indictment -- given its timing (well after trial has begun and double jeopardy has attached) -- certainly appears to be little more than gamesmanship. The Ninth Circuit disdains such a practice. *See, e.g.*, *United States v. James*, 980 F.2d 1314, 1317 (9th Cir. 1992) ("A challenge to the sufficiency of an indictment is not a game in which the lawyer with the sharpest eye or the cleverest argument can gain reversal for his client.") (quoting *United States v. Coleman*, 656 F.2d 509, 510 (9th Cir. 1981)); *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976) ("[W]e

---

[9] Count One has remained substantially the same throughout the three versions of the indictment. *See* Doc. No. 67, Indictment of February 15, 2006 at 1-2; Doc. No. 136, First Superceding Indictment of October 12, 2006 at 2; Doc. No. 1004, Second Superceding Indictment of December 3, 2009 at 2.

[10] It would follow that, if Defendant is correct, Count One would be taken away from the jury. The court would not permit the government to proceed now on the first type of child abuse ("intentionally or knowingly causing death"), given its choice made almost six years ago to proceed on the second type ("serious bodily injury").

must note that the asserted inadequacy of Count One was first brought to the attention of the district court only after all the evidence had been received in an extensive jury trial. . . . Such a long delay in raising the issue suggests a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the defendants. Furthermore, the fact of the delay tends to negate the possibility of prejudice in the preparation of the defense.").

Other circuits concur. *See, e.g.*, *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007) (reiterating that a challenge to an indictment should be made "at the earliest possible moment" to avoid "the needless waste of limited judicial resources") (citing *Pheaster*); *United States v. Panarella*, 277 F.3d 678, 686 (3d Cir. 2002) ("The facts of various cases indicate that the practice of sandbagging, by deliberately postponing the objection, continues as to these defects, particularly the failure to charge an offense.") (quoting 4 Wayne R. LaFave et al., *Criminal Procedure* § 19.1(d), at 741 n.50 (2d ed. 1999)), *overruled in part on other grounds by United States v. Cotton*, 535 U.S. 625 (2002)).

For that reason, courts often apply a rule construing an indictment liberally in favor of validity when an indictment is not challenged on a timely basis prior to trial. *See, e.g.*, *United States v. Arnt*, 474 F.3d 1159, 1162 (9th Cir. 2007); *United States v. James*, 923 F.2d 1261, 1266 (7th Cir. 1991) ("Because of James'

failure to raise objections to the indictment prior to trial, his indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.") (citation and quotation marks omitted).

To be clear, however, the court has not relied on this rule allowing it to construe an indictment "liberally."  Based on the analysis above, there is no need to rely on this standard -- the Indictment is plainly sufficient.  Nevertheless, the court recognizes that given the lateness of Defendant's challenge to the Indictment here, a lesser standard would also apply.  *See Pheaster*, 544 F.2d at 361-62 (addressing a "challenge [that] came in a motion for acquittal after all evidence had been received" and applying "the liberal rules of interpretation" that apply "when an objection is not timely made" and which give a court "considerable leeway to imply the necessary allegations from the language of the indictment").

In short, Defendant could not have been prejudiced by any error as to Count One of the Indictment under Rule 7(c)(2).

///

///

///

///

### III.  **<u>CONCLUSION</u>**

For the foregoing reasons, the Second Superceding Indictment in this case properly alleges Count One -- child abuse felony murder under 18 U.S.C. § 1111(a), as the terms "child" and "child abuse" are defined in 18 U.S.C. § 1111(c).  The Second Superceding Indictment is plainly sufficient, and there has been no constructive amendment of the Second Superceding Indictment by the government's choice to proceed under a "serious bodily injury" theory of "child abuse" set forth in § 1111(c)(3).  The court rejects Defendant's argument raised in his March 18, 2014 Trial Memorandum (and it follows that Dr. Sharon Cooper's testimony is relevant).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 25, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Williams*, Cr. No. 06-00079 JMS-KSC, Order Regarding Sufficiency of Count One of the Second Superceding Indictment, Raised in Defendant's Trial Memorandum, Doc. No. 2452