IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | Crim. No. 06-00079 JMS-KSC |
|---|---|---|
| Plaintiff, | ) ) ) | ORDER REGARDING |
| | ) | DEFENDANT'S REQUEST TO |
| vs. | ) | SUBMIT EVIDENCE OF |
| | ) | INTELLECTUAL DISABILITY TO |
| NAEEM J. WILLIAMS, | ) | THE JURY AT THE ELIGIBILITY |
| | ) | AND/OR SELECTION PHASES |
| Defendant. | ) | |
| _____ | ) | |

**ORDER REGARDING DEFENDANT'S REQUEST TO SUBMIT
EVIDENCE OF INTELLECTUAL DISABILITY TO THE JURY AT THE
ELIGIBILITY AND/OR SELECTION PHASES**

**I. INTRODUCTION**

Defendant Naeem Williams has filed a Trial Memorandum requesting, in part, that the court submit to the jury at the eligibility phase the question whether Defendant is "intellectually disabled" for purposes of *Atkins v. Virginia*, 536 U.S. 304 (2002), and the Federal Death Penalty Act ("FDPA"), such that the death penalty cannot be carried out against him.[1]  Doc. No. 2603.  He further requests that the jury be instructed that if it finds (unanimously or otherwise) Defendant to

---

[1] The court uses "intellectually disabled" and "mentally retarded" interchangeably.  *See United States v. Williams*, 2014 WL 869217, at *1 n.1 (D. Haw. Mar. 6, 2014) (noting that, "[f]or present purposes, the terms are synonymous, referring to precisely the same condition").

1

be "intellectually disabled," then proceedings will end because he would no longer be subject to the death penalty. *Id.* at 4. The court DENIES these requests. The court, however, will allow evidence of intellectual disability as might be relevant to intent (at the eligibility phase) and, if necessary, as potential mitigation evidence (at a selection phase).

## II. DISCUSSION

### A. There Is No Constitutional Right to Have a Jury Decide Whether Defendant Is Intellectually Disabled and Thus Ineligible for a Death Sentence under *Atkins* (or the FDPA)

Defendant's Trial Memorandum implicitly raises a more fundamental question -- whether a defendant has a Constitutional right to have a jury determine whether he is intellectually disabled for purposes of *Atkins* or the FDPA. Although the court has already determined that Defendant has no such right, *see* Doc. No. 2414, *United States v. Williams*, 2014 WL 869217, at *9 (D. Haw. Mar. 6, 2014) (the "March 6, 2014 Order") ("[A] defendant has no constitutional right to a jury trial on an *Atkins* claim, a point that the parties have not disputed.") (citing numerous cases), the court further explains and reaffirms its determination here.[2]

---

[2] As the March 6, 2014 Order noted, some states provide for a jury trial on an *Atkins* claim. *Williams*, 2014 WL 869217, at *9 n.9 (citing *Pennsylvania v. Sanchez*, 36 A.3d 24, 61 (Pa. 2011) ("[I]n nine states, the primary adjudicator of an *Atkins* claim is the trier of fact, *i.e.*, the jury, or the trial judge if the right to a jury is waived.") (citing cases)). In this regard, *Atkins* left to the states "the task of developing appropriate ways to enforce the constitutional
(continued...)

Under the Sixth Amendment, a criminal defendant is entitled to "a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477, (2000) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)) (brackets omitted). For that reason, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. That is, elements of an offense, or their "functional equivalent," must (absent waiver) be found by a jury beyond a reasonable doubt. *Id.* at 494 n.19; *see also Ring v. Arizona*, 536 U.S. 606, 609 (2002) (holding in a capital case that, under *Apprendi*, the government has the burden to prove aggravating factors before a jury that are necessary for imposition of the death penalty).[3]

---

[2](...continued)
restriction" against execution of the intellectually disabled. *Atkins*, 536 U.S. at 317. For example, *Schriro v. Smith*, 546 U.S. 8 (2005), vacated and remanded a Ninth Circuit order *requiring* Arizona courts to determine an *Atkins* issue before a jury because Arizona's courts had not addressed, under Arizona law, the proper measures for adjudicating *Atkins* claims. *Id.* at 9.

State courts have discussed different approaches for adjudicating *Atkins* issues, *see, e.g.*, *United States v. Hardy*, 644 F. Supp. 2d 749, 752-53 (E.D. La. 2008), but none, as far as the court can determine, has held that a defendant is entitled to have a jury decide an *Atkins* claim under the United States Constitution.

[3] *Ring* explains that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact -- no matter how the State labels it -- must be found by a jury beyond a reasonable doubt." 536 U.S. at 602.

3

But *Atkins* is different. "[N]either *Ring* and *Apprendi* nor *Atkins* render the absence of mental retardation the functional equivalent of an element of capital murder which the [prosecution] must prove beyond a reasonable doubt." *In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003).

> [T]he finding of mental retardation does not increase the penalty for the crime beyond the statutory maximum -- death. Rather, a defendant facing the death penalty may avoid that penalty if he successfully raises and proves by a preponderance of the evidence that he is mentally retarded. The [prosecution] does not have a corollary duty to prove that a defendant is "not retarded" in order to be entitled to the death penalty. Accordingly, "an *increase*" in a defendant's sentence is not predicated on the outcome of the mental retardation determination; only a decrease.

*Walker v. True*, 399 F.3d 315, 326 (4th Cir. 2005) (internal citation omitted). *See also United States v. Webster*, 421 F.3d 308, 312 (5th Cir. 2005) (rejecting defendant's "claim that *Apprendi* and *Ring* alone require the government to prove his non-retardation beyond a reasonable doubt"); *United States v. Umana*, 2014 WL 1613886, at *30 (4th Cir. Apr. 23, 2014) ("When a defendant raises mental retardation as an issue, its resolution can only *decrease* the sentence to which the defendant is exposed, and the *Apprendi* line of cases is therefore not applicable."); *State v. Williams*, 831 So.2d 835, 860 n.35 (La. 2002) ("*Atkins* explicitly addressed mental retardation as an exemption from capital punishment, not as a fact the

absence of which operates 'as the functional equivalent of an element of a greater offense.'") (quoting *Ring*, 536 U.S. at 609), *superceded on other ground in part by statute*, as recognized in *State v. Turner*, 936 So.2d 89 (La. 2006)).

Similarly, *Dixon v. United States*, 548 U.S. 1 (2006), held that it is constitutional to place the burden on a defendant to establish a defense of duress by a preponderance of the evidence, reasoning that "the existence of duress normally does not controvert any of the elements of the offense itself." *Id.* at 6.

> Like the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to "avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present."

*Id.* at 7 (quoting *United States v. Bailey*, 444 U.S. 394, 402 (1980)). And like duress, a finding under *Atkins* or the FDPA that a defendant is intellectually disabled also exempts a defendant from a form of punishment although it "does not controvert any of the elements of the offense itself." *Id*. at 6. *Dixon* reaffirmed this well-accepted principle:

> [E]ven where Congress has enacted an affirmative defense in the proviso of a statute, the "settled rule in this jurisdiction [is] that an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . and that it is incumbent on one who relies on such an exception to set

5

it up and establish it."

*Id.* at 13 (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922)).

It follows that there is no constitutional requirement for a jury determination of intellectual disability under *Atkins* or the FDPA. *See, e.g.*, *Walker*, 399 F.3d at 326; *Walton v. Johnson*, 269 F. Supp. 2d 692, 698 n.3 (W.D. Va. 2003) ("[A] finding of mental retardation precludes the state from carrying out the death sentence. Thus, it is analogous to the question of competency to be executed in death penalty cases, which need not be decided by a jury."); *In re Hawthorne*, 105 P.3d 552, 558 (Cal. 2005) ("[W]e perceive no constitutional mandate in [disallowing a jury trial on an *Atkins* claim in postconviction proceedings].").[4]

**B.     Given No Constitutional Right to a Jury Determination, the Court Will Not Allow a "Second Bite" at the *Atkins* Question**

After considering over two weeks of testimony and hundreds of pages of evidence, the court concluded in its 101-page pretrial March 6, 2014 Order that Defendant failed to prove that he is intellectually disabled such that he would be disqualified from possible imposition of the death penalty. *Williams*, 2014 WL 869217, at *40. The court made such a finding based on Defendant's Motion

---

[4] Indeed, Defendant recognized at a hearing on April 24, 2014 that *Atkins* does not raise an "*Apprendi* issue," and he is not seeking a jury determination on that basis. Rather, he acknowledges he is seeking a "second bite" at the *Atkins* question based on limited caselaw allowing the procedure (primarily from states which have statutes allowing jury trials on the issue). *See Hardy*, 644 F. Supp. 2d at 752-53.

specifically seeking a pretrial determination from the court that he had a "disqualifying mental capacity." *See* Doc. No. 2064, Defendant's "Motion for Pretrial Determination That the Death Penalty Cannot Be Carried out Against Naeem Williams Because of a Disqualifying Mental Capacity Within the Meaning of 18 U.S.C. §3596(c) and *Atkins v. Virginia*, 536 U.S. 304 (2002)."[5]

Defendant now seeks to re-consider the *Atkins* question before the jury at the eligibility phase. That is, Defendant seeks not only to present evidence of intellectual disability that might be relevant to his intent (or lack of intent) at the eligibility phase, or as mitigation evidence at the selection phase, but also requests that the threshold *Atkins* question be specifically submitted to the jury at the eligibility phase. In particular, he asks the court to instruct the jury that "if the jury unanimously (or nonunanimous [sic]) finds that the Defendant is mentally retarded, he will not be eligible for the death penalty under *Atkins*." Doc. No. 2603 at 4. He further asks that "[i]f the jury does not [find the Defendant mentally retarded], and if the Court requires unanimity for such a finding, then the jury can be instructed in

---

[5] Defendant's Motion asking this court to decide the *Atkins* issue did not suggest that a jury should or could otherwise address the question, either at that point or after an adverse court determination. Indeed, the Motion sought, in the alternative, that if the court deemed Defendant eligible for the death penalty, the court should specifically permit him to introduce this type of evidence at a penalty phase of trial in mitigation. *See* Doc. No. 2064, Def.'s Mot. at 4; Doc. No. 2064-1, Def.'s Mem. in Supp. at 49-51. That is, Defendant did not as much as hint that a jury should later have an opportunity to reconsider the court's finding, should the court rule against him.

7

the sentencing phase that any juror who finds that the [D]efendant is mentally retarded should consider their finding as a mitigating factor." *Id.*[6]

In its March 6, 2014 Order, the court indicated that -- despite its conclusion that Defendant failed to prove he is intellectually disabled under *Atkins* and the FDPA -- Defendant may still present evidence of intellectual disability "at a punishment phase of the trial as part of an attempt to demonstrate mitigating factors, should he be found guilty of one of the capital counts of the Indictment." *Williams*, 2014 WL 869217, at *41. The court reaffirms that conclusion here -- Defendant may present evidence of intellectual disability "as part of an attempt to demonstrate mitigating factors." Indeed, 18 U.S.C. § 3592(a)(1) specifically lists

---

[6] Defendant relies heavily on *United States v. Cisneros*, 385 F. Supp. 2d 567 (E.D. Va. 2005), where the trial court indicated it would submit the *Atkins* question to the jury, as follows:

> After the presentation of evidence during the penalty phase of this capital murder trial, the jury will be instructed to make a finding of whether the defendant has established that he is mentally retarded by a preponderance of the evidence. If the jury unanimously finds that the defendant is mentally retarded, he will not be eligible for the death penalty under *Atkins*. If the finding is not unanimous, however, the jury will be instructed that any juror who finds that the defendant is mentally retarded should consider their finding as a mitigating factor.

*Id.* at 569. *Cisneros*, however, is easily distinguishable -- the court had not previously conducted an *Atkins* proceeding on a pretrial basis. A jury had convicted the defendant and was proceeding to the penalty phase. *Id.* Here, on the other hand, Defendant filed a Motion specifically seeking a pretrial determination that he was ineligible for the death penalty under *Atkins* and the Federal Death Penalty Act, *see* Doc. No. 2064, and the court has ruled. (To be clear, the court is not giving preclusive effect to findings in its March 6, 2014 Order, but rather is determining that, at the penalty phase in this case, the specific *Atkins* question should not be re-submitted to the jury for a finding on intellectual disability.)

"impaired capacity" as a possible mitigating factor, at least as of the time of commission of the crime. *See also, e.g.*, *Simmons v. South Carolina*, 512 U.S. 154, 163 (1994) (mentioning "mental capacity" as a factor a jury may consider in mitigation).[7]

But allowing a jury to consider such evidence in either the eligibility or selection phase is entirely different than submitting the threshold *Atkins* question itself to a jury. That is, "[m]ental retardation as a mitigator and mental retardation under *Atkins* . . . are discrete legal issues." *Bobby v. Bies*, 556 U.S. 825, 836 (2009); *see also Allen v. Buss*, 558 F.3d 657, 662 (7th Cir. 2009) ("[T]here is a difference between using mental retardation as a mitigating factor and categorically excluding mentally retarded persons from the death penalty altogether. One is a balancing test and the other is a ban.") (citing *Atkins*, 536 U.S. at 320-21). This is especially so where Defendant has already spent considerable effort attempting to prove -- unsuccessfully -- such a diminished mental capacity in lengthy proceedings before this court. It would be improper and duplicative for the jury to now re-consider the specific question under *Atkins* (with instructions to the jury

---

[7] Likewise, the court previously determined that evidence of Defendant's mental capacity might be relevant towards whether Defendant had the requisite intent during the guilt phase. *See, e.g.*, Doc. No. 780, Order Denying Government's Amended Motion To Exclude the Defendant's Mental Health Expert Witnesses at the Guilt-Phase (Feb. 20, 2009) (Ezra J.). That reasoning applies as well at the eligibility phase, where Defendant's intent is also at issue.

that if it finds the Defendant intellectually disabled, then proceedings would end because he cannot constitutionally be executed). This is a question the court has already decided when ruling on Defendant's prior Motion seeking such a ruling from the court at the pretrial phase. *Cf. Umana*, 2014 WL 1613886, at *30 (commenting that the defendant "cannot now complain that the district court followed the very procedure that he requested" in deciding the *Atkins* question with the defendant, not the government, having the burden of proof). The court will thus allow this evidence at those phases -- subject to appropriate limitations -- even if it will not allow the jury to make an *Atkins* determination.[8]

### III. CONCLUSION

The court DENIES Defendant's request to re-submit to the jury the question whether he is intellectually disabled and thus, under *Atkins* and the Federal Death Penalty Act, he cannot be sentenced to death. This ruling, however, does not preclude evidence of Defendant's mental capacity at the eligibility phase

---

[8] And at a selection phase, the court will not require a "nexus" between such mitigating evidence and the crime or crimes at issue. *Smith v. Texas*, 543 U.S. 37, 44 (2004) ("There is no question that a jury might well have considered petitioner's IQ scores and history of participation in special-education classes as a reason to impose a sentence more lenient than death. Indeed, we have held that a defendant's IQ score of 79, a score slightly higher than petitioner's, constitutes relevant mitigation evidence.") (citation omitted); *Tennard v. Dretke*, 542 U.S. 274, 287 (2004) (holding that evidence of impaired intellectual functioning is relevant mitigating evidence at penalty phase of capital case, regardless of whether defendant establishes a nexus between his mental capacity and the crime).

as may be relevant to intent, consistent with prior court rulings that would have allowed such evidence at the guilt phase.  And Defendant may also submit such evidence as a potential mitigating factor at a selection phase, with the specific language describing this mitigating factor to be determined later (if necessary).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 25, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Williams*, Crim. No. 06-00079 JMS-KSC, Order Regarding Defendant's Request to Submit Evidence of Intellectual Disability to the Jury at the Eligibility and/or Selection Phases