IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 06-00079 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART GOVERNMENT'S |
| vs. | ) | OMNIBUS PENALTY PHASE |
| | ) | MOTIONS IN LIMINE, DOC. NO. 2605 |
| NAEEM J. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S OMNIBUS PENALTY PHASE MOTIONS IN LIMINE, DOC. NO. 2605

## I. INTRODUCTION

The government's April 21, 2014 Omnibus Penalty Phase Motions in Limine seek to exclude four categories of evidence from the selection phase of this capital murder trial (in the event that the jury determines that Defendant Naeem Williams ("Defendant") is eligible for a sentence of death). *See* Doc. No. 2605. Defendant filed an Opposition April 27, 2014, Doc. No. 2639, and argument was heard on May 5, 2014. Based on the following, the court GRANTS the Motions in Limine in part and DENIES them in part.

## II.  ANALYSIS

**A.      Motion to Exclude Unsworn Allocution by the Defendant**

The government seeks to preclude Defendant from offering unsworn allocution -- *i.e.*, an unsworn statement to the jury not subject to cross examination asking for mercy, explaining his conduct, apologizing for the crime, and/or anything else in an effort to lessen his sentence.  *See* Doc. No. 2605, Gov't Mot. at 5; *see also United States v. Jackson*, 549 F.3d 963, 980 n.22 (5th Cir. 2008) (defining allocution).  The government argues that Defendant does not have a constitutional or statutory right to allocution, and an unsworn statement fails the probative balancing test outlined in the Federal Death Penalty Act ("FDPA").  The court rejects this argument.

The government bases its argument on caselaw outside this Circuit holding that there is no constitutional or statutory right to unsworn allocution before the jury in capital sentencing hearings.  *See United States v. Lawrence*, 735 F.3d 385, 407 (6th Cir. 2013) (collecting and joining caselaw from the Fourth, Fifth, and Eighth Circuits that there is no constitutional right to allocution before a jury in a federal capital sentencing hearing).  This argument ignores, however, caselaw from this Circuit -- *Boardman v. Estelle*, 957 F.2d 1523 (9th Cir. 1992) --

which held that a trial court's denial of a defendant's request to allocute before

sentencing amounts to a denial of due process.  In particular, *Boardman* held:

> Recognizing the personal nature of the Sixth
> Amendment's guarantee of the right to make a defense,
> the unique ability of a defendant to plead on his own
> behalf, and the Supreme Court's acknowledgment of the
> continuing vitality of the practice of permitting a
> defendant to allocute before sentencing, we hold that
> allocution is a right guaranteed by the due process clause
> of the Constitution.  Our holding is limited to
> circumstances in which a defendant, either unrepresented
> or represented by counsel, makes a request that he be
> permitted to speak to the trial court before sentencing.  If
> the trial court denies that request, the defendant has not
> received due process.

*Id.* at 1529-30.  Thus, *Boardman* stands for the proposition that "[d]ue process

requires that a defendant who seeks to speak must be given such an opportunity

before a sentence is imposed."  *See United States v. Silva*, 472 F.3d 683, 687 (9th

Cir. 2007).

Although *Boardman* did not address capital sentencing, *United States

v. Chong*, 104 F. Supp. 2d 1232 (D. Haw. 1999), applied *Boardman* in holding that

a defendant has a right to allocute before a sentencing jury in a capital sentencing

hearing.  *Chong* saw "no basis for distinguishing [*Boardman*] from the instant

case," and explained that allowing a defendant to allocute before the sentencing

judge would be an "empty formality" in capital cases where the judge lacks

3

sentencing discretion.  *Id.* at 1234.  *Chong* further explained that a defendant

testifying under oath and subject to cross examination is not the same as allocution:

> The Court observes that the fear of cross-examination
> might compel capital defendants to forego addressing the
> jury and offering pleas for mercy, expressions of
> remorse, or some explanation that might warrant a
> sentence other than death.  Moreover, the Court sees no
> reason why a capital defendant should have a lesser right
> to explain his position and ask for mercy by being sworn
> and subject to cross examination than a non-capital
> defendant, who has an unfettered right to allocute.

*Id* at 1236.

Although not specific to a capital case, the court believes that the

prudent approach is to follow *Boardman*.  *Boardman* recognizes a constitutional

right to allocute, and that to make such right meaningful, the court must provide

Defendant the opportunity to allocute before the jury.  And to the extent the

government asserts that allocution may run afoul of the evidentiary standard

applicable to capital cases outlined in 18 U.S.C. § 3593(c), the court believes that

limits on the scope of allocution and/or appropriate instructions to the jury will

address this concern.  *See United States v. Biagon*, 510 F.3d 844, 847 (9th Cir.

2007) ("[W]e have 'never held that a defendant has a right to unlimited

allocution.'" (quoting *United States v. Leasure*, 122 F.3d 837, 840 (9th Cir. 1997));

*see, e.g.*, *United States v. Wilson*, 493 F. Supp. 2d 509, 511 (E.D.N.Y. 2007)

4

(placing limits on scope of allocution); *United States v. Henderson*, 485 F. Supp. 2d 831, 845 (S.D. Ohio 2007) (holding that "Defendant has a right to allocute before the sentencing jury subject to an appropriate limiting instruction").

During argument on this matter, counsel for Defendant indicated that, if permitted to allocute, Defendant would read from a prepared statement. The court will require, at a future time to be determined, that this statement be provided to the court and the government for review, and to allow the government to make specific objections, if any. The court therefore DENIES the government's Motion in Limine to preclude Defendant from providing unsworn allocution before the jury during the selection phase, and will set appropriate limits on the allocution after further discussion with counsel.

## B.     Motion to Exclude "Execution Impact" Evidence

Next, the government seeks to prevent Defendant from introducing evidence at the mitigation phase relating to the effect his execution would have on his family, friends, or loved ones, arguing that such evidence is irrelevant and improper, even at that stage. Doc. No. 2605, Gov't Mot. at 11.

Under 18 U.S.C. § 3592(a)(8), in determining whether to impose a sentence of death, a finder of fact "shall consider any mitigation factor, including: . . . [o]ther factors in the defendant's background, record, or character or any other

circumstance of the offense that mitigate against imposition of the death sentence."

In this regard, § 3592(a)(8) is nearly identical to factors identified in caselaw under

the Eighth and Fourteenth Amendments. *See, e.g.*, *Lockett v. Ohio*, 438 U.S. 586,

604 (1978) (holding that constitutionally relevant mitigating evidence consists of

"any aspect of a defendant's character or record and any of the circumstances of

the offense that the defendant proffers as a basis for a sentence less than death")

(plurality); *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982) (reversing and

remanding a death sentence, applying *Lockett*, and reasoning that a sentencing

court "may determine the weight to be given relevant mitigating evidence. . . [b]ut

[it] may not give it no weight by excluding such evidence from [its]

consideration."); *Williams v. Ryan*, 623 F.3d 1258, 1270-71 (9th Cir. 2010)

(applying *Lockett* and *Eddings*).

   Given these standards, the government identifies five categories of

"execution impact" evidence that it believes are irrelevant to the issue of

mitigation, specifically: "testimony that the defendant's family and friends love

him, that a death verdict would have a negative impact on them, their own personal

views about the death penalty, their opinion regarding the sentence that should be

imposed in this case, or any general plea for sympathy or mercy." Doc. No. 2065,

Gov't Mot. at 17.[1]

Initially, in response, Defendant concedes (appropriately) that he

"does not intend to ask his mitigation witnesses to state their personal views about

the death penalty or their opinion[s] about the sentence that should be imposed in

---

[1] The government relies extensively on Fourth and Fifth Circuit opinions specifically holding that such "execution impact" evidence is irrelevant towards mitigation. *See United States v. Hager*, 721 F.3d 167, 194 (4th Cir. 2013) ("[A]llowing a capital defendant to argue execution impact as a mitigator is improper."); *United States v. Snarr*, 704 F.3d 368, 401 (5th Cir. 2013) ("Because such evidence 'does not reflect on [the defendant's] background or character or the circumstances of his crime,' . . . this court consistently has affirmed the exclusion of execution impact testimony[.]") (citing cases).

But these opinions also acknowledge that other Circuits (and district courts in other Circuits) permit such testimony, at least to some degree. *See, e.g.*, *Wright v. Bell*, 619 F.3d 586, 597-98 (6th Cir. 2010) (concluding, on habeas review, that defense counsel was not deficient when presenting "the testimony of [defendant's] mother about the adverse impact [defendant's] execution would have on the family"); *Sinisterra v. United States*, 600 F.3d 900, 909-10 (8th Cir. 2010) (indicating a jury could consider in mitigation "evidence of the impact a death sentence would have on [defendant's children]"); *United States v. Wilson*, 493 F. Supp. 2d 491, 506-07 (E.D.N.Y. 2007) (reasoning that "the sort of evidence the Government seeks to preclude, *i.e.*, how [defendant's] family would feel if he were executed, may fairly be considered part of [defendant's] 'background' as that term is used in Section 3592(a)(8)"); *United States v. Fell*, 2005 WL 1634067, at *2 (D. Vt. July 5, 2005) ("Third party impact testimony may shed light on [defendant's] background and character by providing testimony about any 'positive qualities,' 'his capacity to be of emotional value to others' and the nature of his interpersonal relationships. However . . . sympathy for a defendant's family should not be considered by the jury in mitigation. Evidence introduced solely to elicit jury sympathy towards third parties impacted by [defendant's] execution will be precluded."); *United States v. Moonda*, 2007 WL 2071924, at *1 (N.D. Ohio July 13, 2007) (allowing "testimony from the defendant's family and friends expressing affection for the defendant and evidence of the impact that a death sentence would have on the defendant's family members" under § 3592(a)(8)).

Ultimately, however, as discussed below, this court must follow guidance from the Ninth Circuit in *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), which gives the district court discretion to allow some, limited, "execution impact" evidence as being relevant towards mitigation.

this case." Doc. No. 2639 at 20, Def.'s Opp'n at 18. Accepting that concession, the third and fourth categories identified by the government are not at issue. But Defendant contests the government's Motion by seeking to offer evidence in the first two categories, *i.e.*, "testimony that the defendant's family and friends love him, [and] that a death verdict would have a negative impact on them." Doc. No. 2065, Gov't Mot. at 17. He relies on parameters discussed in *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), which upheld a district court's "refus[al] to permit defense witnesses to express their opinion on whether [defendant] should be given the death penalty, although witnesses were allowed to ask the jury to spare [defendant's] life." *Id.* at 990. In so doing, *Mitchell* reasoned:

> Here the court drew a fine, but appropriate, line for testimony as to whether Mitchell should receive the death penalty. *It allowed witnesses to testify regarding their affection for Mitchell and their wish for his life to be spared, but did not allow them to offer an opinion about what they thought the jury's verdict should be.* In doing so, the court kept the jury focused on relevant mitigating evidence, *i.e.*, "evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." Testimony that was adduced from Mitchell's family and teachers about his record and character was relevant mitigating evidence because it had a tendency to show that imposition of the death penalty was not justified. *See* 18 U.S.C. § 3592(a)(8). By the same token, personal opinions about what the verdict should be are not probative of any statutory mitigating factor identified in § 3592(a)(1)-(8). *Id.* § 3592(a)(8). The district court had

> discretion to exclude irrelevant evidence, and acted well
> within it here.

*Id.* at 991 (emphasis added) (internal citations omitted). *Mitchell* thus establishes

that the court has discretion to allow at least some "execution impact" testimony --

consistent with several other federal courts as noted above -- and, in particular, as

to relatives' "affection for" a defendant and "their wish for his life to be spared."

Such evidence can be "relevant mitigating evidence because it ha[s] a tendency to

show that imposition of the death penalty [is] not justified," and can concern his

"record and character." *Id.* By the same token, however, *Mitchell* clearly

recognizes that it is improper for third parties to testify as to "personal opinions

about what the [jury's] verdict should be." *Id.*[2]

---

[2] The government also relies on *Stensen v. Lambert*, 504 F.3d 873 (9th Cir. 2007), which upheld a Washington state court's exclusion of certain "execution impact" testimony (described as evidence of "the impact of [defendant's] execution on his family, particularly on his three young children and his father, who suffered from a heart condition") as mitigation evidence. *Id.* at 891-92. *Stensen*, however, did so on habeas review, applying the standard set forth in 28 U.S.C. § 2254(d)(1) (whether a state court was "contrary to, or involv[ing] an unreasonable application of federal law"). And *Stensen* reasoned that "[t]he testimony the trial court excluded encompassed a very narrow swath of evidence, revealing only what [defendant's] family members' *opinions* were as to the sentence [he] should receive." *Id.* at 892 (emphasis added). *Stensen* is thus consistent with *Mitchell* insofar as indicating it is improper to allow a family member to offer an opinion on the jury's verdict.

The government emphasizes *Stenson*'s statement that the defendant "cannot point to any federal case requiring admission of 'execution impact' testimony because there are no such cases." *Id.* So too, this court is not implying that *Mitchell* (or any other case) *requires* admission of "execution impact" testimony in mitigation -- rather, under *Mitchell*, the court has discretion to allow some such testimony, but with appropriate limitations.

Although *Mitchell* explains that this is a "fine line," the court will allow Defendant, if desired, to present limited testimony from others about "their affection for [him] and their wish for his life to be spared." *Id.* That is, the court DENIES the government's Motion to that extent. To make the parameters clear, Defense witnesses may also, if desired, testify that Defendant's life has value to them, and in that sense, his death could impact them. As Defense counsel stated at oral argument, they may testify to the effect "that he has been a good enough person to build a relationship with someone to the point that that person will say I care that he's going to be executed and I don't want to see him executed." Doc. No. 2661, Tr. May 5, 2014, at 16.

In all other respects, however, the Motion to preclude execution impact testimony is GRANTED. Even if a witness testifies that he or she does not want to see Defendant executed, it would not be relevant as a mitigating factor to understand what specific impact his execution would have on that witness. At that point, such testimony would not be relevant towards Defendant's background, character, or the offense -- it would be purely to garner general sympathy for the defense. Moreover, at this point, such evidence would be inadmissible and improper under 18 U.S.C. § 3593(c) because any probative value would be "outweighed by the danger of creating unfair prejudice, confusing the issues, or

misleading the jury" -- that is, any marginal relevance toward Defendant's background, character, or the offense would be outweighed by introducing direct evidence of an impact on someone else. *See, e.g.*, *United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004) ("[U]nder the FDPA Standard, judges continue their role as evidentiary gatekeepers and, pursuant to the balancing test set forth in § 3593(c), retain the discretion to exclude any type of unreliable or prejudicial evidence that might render a trial fundamentally unfair.") (citations, internal quotation marks, and brackets omitted); *Cf. United States v. Taveras*, 584 F. Supp. 2d 535, 539 (E.D.N.Y. 2008) ("The court has a duty to minimize the 'risk [of] a verdict impermissibly based on passion, not deliberation.'") (quoting *Payne v. Tennessee*, 501 U.S. 808, 836 (1991) (Souter, J., concurring)).

Further, witnesses may not testify as to their opinion about what they think the jury's verdict should be (as conceded by Defendant). Specifically, the court precludes testimony from Defendant's witnesses as to "their own personal views about the death penalty, their opinion regarding the sentence that should be imposed in this case, or any general plea for sympathy or mercy." Doc. No. 2065, Gov't Mot. at 17. As cautioned in *Fell*, any "sympathy for a defendant's family should not be considered by the jury in mitigation," and so "[e]vidence introduced

solely to elicit jury sympathy towards third parties impacted by [defendant's] execution will be precluded." 2005 WL 1634067, at *2.

## C.  Motion to Preclude "Comparative Proportionality" Evidence and Arguments

The government also seeks to preclude Defendant from submitting evidence and/or argument to the jury comparing the facts of this case to any other case in which a sentence of death was not imposed. Doc. No. 2605, Gov't Mot. at 16. The government argues that "comparative proportionality" evidence is neither constitutionally required nor relevant to mitigation. *Id.* In opposition, Defendant argues that the court should follow *United States v. Sampson*, 335 F. Supp. 2d 166 (D. Mass. 2004), which indicated that proportionality evidence may be relevant as a mitigating factor for purposes of sentencing under the FDPA.[3] *Id.* at 195.

---

[3] Ultimately, however, *Sampson* excluded such evidence (also consisting of case summaries from Mr. McNally of the Federal Death Penalty Resource Counsel Project) because the probative value of such evidence was outweighed by the danger of unfair prejudice:

> In order to determine which of the many other cases are sufficiently similar to this case to bear on the question of proportionality, the jury would have had to hear a large amount of evidence. In effect, the court would have had to conduct many mini-trials of other FDPA cases, since a jury would be unable to perform meaningful proportionality review based on brief summaries of other cases. Rather, in order to fully appreciate the verdicts reached in those cases, jurors in this case would have had to hear substantial testimony regarding the crime and the defendant in the other cases. The amount of time that would have had to be spent educating jurors regarding all other FDPA cases in a non-prejudicial manner, which could have been measured in weeks or months, as compared to the amount of time spent on the mitigation case as a whole, likely would have diverted the jury's focus from the facts relating to Sampson and his crimes.

(continued...)

Defendant specifically proposes to present to the jury, via the testimony of attorney Kevin McNally, the Director of the Federal Death Penalty Resource Counsel Project, "(1) a statistical summary of the number of federal death eligible cases as compared to the small number of cases in which it has actually been imposed; and (2) a brief summary of the facts of a select group of minor victim federal murder cases which are equally or more aggravated than [Defendant's] case in which the death penalty has not even been sought." Doc. No. 2639, Def.'s Opp'n at 23. Based on the following, the court finds that Defendant's proposed evidence is inadmissible.

This dispute ultimately turns on whether the proffered "comparative proportionality" evidence is relevant mitigation evidence and admissible under the FDPA.[4] In this regard, the FDPA provides:

---

[3](...continued)
335 F. Supp. 2d at 197.

[4] The Supreme Court and the Ninth Circuit have both held that the Eighth Amendment does not require a court to compare the possible sentence in its case with the penalties imposed, or not imposed, in similar cases. *See Pulley v. Harris*, 465 U.S. 37, 50-51 (1984); *Jurek v. Texas*, 428 U.S. 262 (1976); *Ceja v. Stewart*, 97 F.3d 1246, 1252 (9th Cir. 1996). *Pulley* explains that there is a difference between "[striking] down punishments as inherently disproportionate, and therefore cruel and unusual, when imposed for a particular crime or category of crime," 465 U.S. at 43, as compared to whether a penalty is "unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime." *Id.* *Pulley* rejected that this latter inquiry is required under the Eighth Amendment, holding that a capital defendant does not have a right to a comparative proportionality review on appeal. *Id.*

In this regard, *Pulley* relied on *Jurek*, which upheld a Texas death sentence against a

(continued...)

(a) Mitigating factors. -- In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:

(1) Impaired capacity. -- The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

(2) Duress. -- The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.

---

[4](...continued)
challenge to the lack of a statutory comparative proportionality review. *Pulley*, 465 U.S. at 48-49. *Pulley* described that a proportionality review in *Jurek* "would have been constitutionally superfluous" where the Texas statute itself included safeguards to ensure that death sentences were "evenhanded, rational, and consistent," including that there must be at least one statutory aggravating circumstance before a death sentence can be considered. *Id.* at 48 (citing *Jurek*, 428 U.S. at 276).

Here, the FDPA has safeguards -- similar to the factors discussed in *Jurek* -- for application of the death penalty: the requirement of gateway intent factors, and statutory aggravating factors. *See* 18 U.S.C. §§ 3591(a)(2), 3592(b)(c), & 3593. That is, the statutory scheme itself is a "means to promote the evenhanded, rational, and consistent imposition of death sentences." *Pulley*, 465 U.S. at 49. The statute is a means of "ensur[ing] proportionality," *United States v. Umana*, 2014 WL 1613886, at *28 (4th Cir. Apr. 23, 2014), by limiting the death penalty "to those offenders who commit a narrow category of the most serious crimes and whose extreme culpability makes them the most deserving of execution." *Id.* (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 420 (2008)). The "eligibility phase . . . channel[s] and limit[s] the jury's discretion to ensure that the death penalty is a proportionate punishment and therefore not arbitrary or capricious in its imposition." *Buchanan v. Angelone*, 522 U.S. 269, 275-76 (1998).

And the Ninth Circuit has specifically upheld the constitutionality of the FDPA in this regard, rejecting that the FDPA is unconstitutional despite a lack of proportionality review even if it includes non-statutory aggravating factors. *See Mitchell*, 502 F.3d at 980 (joining other circuits in *rejecting* the view that the Constitution requires proportionality review when a jury is allowed to consider nonstatutory aggravating factors, leading to a danger that the death penalty will be imposed arbitrarily or capriciously).

(3) Minor participation. -- The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.

(4) Equally culpable defendants. -- Another defendant or defendants, equally culpable in the crime, will not be punished by death.

(5) No prior criminal record. -- The defendant did not have a significant prior history of other criminal conduct.

(6) Disturbance. -- The defendant committed the offense under severe mental or emotional disturbance.

(7) Victim's consent. -- The victim consented to the criminal conduct that resulted in the victim's death.

(8) Other factors. -- Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

18 U.S.C. § 3592(a).

Thus, "[t]he Act lists seven types of mitigating factors, plus a catch-all, that the jury 'shall consider' in determining whether to recommend a death sentence." *United States v. Gabrion*, 719 F.3d 511, 524 (6th Cir. 2013) (en banc), *cert. denied*, 2014 WL 1659914 (U.S. Apr. 28, 2014). These factors generally concern a defendant's culpability ("[i]mpaired capacity[,]" "unusual and substantial duress," "the defendant's participation was relatively minor," "[a]nother

defendant or defendants, equally culpable in the crime, will not be punished by death," "[t]he defendant committed the offense under severe mental or emotional disturbance[,]" and "[t]he victim consented to the criminal conduct that resulted in the victim's death"); or the defendant's background ("The defendant did not have a significant prior history of other criminal conduct"); with the remaining factor being a "catch-all" that "simply tracks the Supreme Court's definition of mitigation evidence." *Id.* That is, "[e]very indication in the statute is [that] all of the examples of mitigating evidence listed in § 3592(a) concern the defendant's background, culpability, or crime." *Id.*

Although the standard for mitigation evidence is broad, the evidence must still be "relevant." "The statutory language of 'any mitigating factor,' [in § 3592(a)], is the same as the Constitutional requirement of 'any *relevant* mitigating factor[.]'" *United States v. Taylor*, 583 F. Supp. 2d 923, 935 (E.D. Tenn. 2008) (quoting *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 248 (2007) (citation omitted and emphasis added)). *See also Buchanan*, 522 U.S. at 276 ("]I]n the selection phase, we have emphasized the need for a broad inquiry into all *relevant* mitigating evidence to allow an individualized determination.") (emphasis added); 18 U.S.C. § 3593(c) ("The defendant may present any information relevant to a mitigating factor."). And relevant mitigating evidence is "any aspect of a

defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett*, 438 U.S. at 604.[5]

Given that standard for "relevance" under § 3592(a), the court agrees with and follows the many courts that have disallowed comparative proportionality evidence at a mitigation/selection phase. *See Taylor*, 583 F. Supp. 2d at 935 ("The outcomes of other cases . . . have nothing to do with the defendant in this case or the circumstances of his offense or any of the mitigating factors in § 3592(a)."); *see also United States v. Caro*, 461 F. Supp. 2d 459, 465 (W.D. Va. 2006) ("[A]llowing the defendant during closing argument to reference totally unrelated cases in which the death penalty was not sought or the defendant was not sentenced to death, would lead to a confusion of the issues and mislead the jury."); *United States v. McCluskey*, Crim. No. 10-2734 JCH (D.N.M. Nov. 18, 2013) (Memorandum Opinion and Order denying Defendant McCluskey's Motion in Limine to Admit Testimony of Kevin McNally); *United States v. Regan*, 221 F. Supp. 2d 659, 660-61 (E.D. Va. 2002) (concluding that "because Defendant has no

---

[5] *See also United States v. Sampson*, 486 F.3d 13, 45 (1st Cir. 2007) (rejecting the argument that "a trial court may not restrict the presentation of relevant evidence offered in mitigation of a possible death sentence," reasoning that "[t]his argument cannot be literally true; if it were, a capital defendant would have an unrestricted license to introduce the most confusing or misleading evidence as long as it was marginally relevant") (citations omitted).

underlying constitutional right of proportionality review, he has no right to discovery" of evidence "that would compare his conduct to that of others convicted of espionage," and reasoning that "[t]he conduct of other individuals involved in totally unrelated acts of espionage has no bearing on the culpability of the Defendant's conduct for mitigation purposes").[6]

In sum, "comparative proportionality review" is not constitutionally required. *See Pulley*, 465 U.S. at 50-51. The FDPA is likewise constitutional, despite a lack of comparative proportionality review. *See Mitchell*, 502 F.3d at 980. Such evidence is irrelevant as a mitigation factor under § 3592(a). And even if it might have some relevance, the evidence proffered by Defendant is likely to confuse and mislead the jury. *See* 18 U.S.C. § 3593(c). Accordingly, the court

---

[6] These cases also conclude that, even if comparative proportionality evidence is marginally relevant, such evidence is inadmissible under § 3593(c) because its probative value is limited as compared to a high danger of confusing issues and misleading the jury. *See, e.g.*, *Taylor*, 583 F. Supp. 2d at 935-36 ("Such information has no probative value and would confuse and mislead the jury with irrelevant information.") (citations omitted); *Sampson*, 486 F.3d at 44-45 (upholding the district court's exclusion of proportionality evidence from Kevin McNally under § 3593(c)); *Regan*, 221 F. Supp. 2d at 660-61 (concluding that proportionality evidence relating to other espionage cases could not be used as a mitigating factor because it lacked probative value and there was a significant danger of confusing the issues and misleading the jury). The court agrees with the persuasive analysis in those cases, and also concludes that, even if comparative proportionality evidence is relevant, it is nevertheless inadmissible here as confusing and misleading.

GRANTS the government's Motion to preclude comparative proportionality evidence.[7]

## D. Motion to Preclude Arguments That "Beyond a Reasonable Doubt" Standard Applies to Weighing Process

Lastly, the government seeks to preclude Defendant from arguing that the government must prove beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors in determining whether a sentence of death is justified. The court agrees with the government -- Ninth Circuit authority is directly on point. *See Mitchell*, 502 F.3d at 993-94 (rejecting the argument that "the rule of *Apprendi* requires not only that the question whether aggravators outweigh mitigators and the question whether death is justified be submitted to a jury -- but that they be proved beyond a reasonable doubt").

Under 18 U.S.C. § 3593(e),

the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

---

[7] To avoid any confusion, this ruling does not preclude Defendant from making the entirely distinct argument that Delilah Williams will not be punished by death for "equally culpable" conduct in the same crime. *See* 18 U.S.C. § 3592(a)(4).

And if the jury reaches this stage, it will have necessarily already found (beyond a reasonable doubt) that "at least one gateway intent factor existed, and at least one statutory aggravating factor existed," *Mitchell*, 502 F.3d at 993, so as to make Defendant eligible for the death penalty. At this point, "the jury's task is no longer to find whether factors exist; rather each juror is to 'consider' the factors already found and to make an individualized judgment whether a death sentence is justified." *Id.* This "weighing step . . . 'merely channels a jury's discretion by providing it criteria by which it may determine whether a sentence of life or death is appropriate.'" *Id.* (quoting *Kansas v. Marsh*, 548 U.S. 163, 177 (2006)).

Although *Apprendi* requires a jury to determine beyond a reasonable doubt a "fact" that has the effect of increasing a sentence, 530 U.S. at 490, a jury's determination under § 3593(e) "is not a finding of fact, but a moral judgment." *Gabrion*, 719 F.3d at 533.

> What § 3593(e) requires . . . is not a finding of fact in support of a particular sentence. What § 3593(e) requires is a determination of *the sentence itself*, within a range for which the defendant is already eligible. That makes this [issue] different from any in which the Supreme Court has applied *Apprendi*.

*Id. See also, e.g.*, *United States v. Fields*, 483 F.3d 313, 346 (5th Cir. 2007) ("[T]he *Apprendi/Ring* rule [does] not apply here because the jury's decision that

the aggravating factors outweigh the mitigating factors is not a finding of fact. Instead, it is a 'highly subjective,' 'largely moral judgment' 'regarding the punishment that a particular person deserves.'") (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 340 n.7 (1985)).

In response, Defendant emphasizes that *Mitchell* was reviewing a district court instruction for plain error, and qualified its holding by stating that the "resolution of the question . . . is not squarely presented." 502 F.3d at 994. *Mitchell*, however, unequivocally rejected the defendant's argument that *Apprendi* and its progeny required a jury to make its decision weighing the factors finding beyond a reasonable doubt. *Id.* at 993-94. Moreover, *Mitchell* is consistent with "[e]very circuit to have addressed the argument that [Defendant] makes here -- six circuits so far -- [which have] rejected it." *Gabrion*, 719 F.3d at 533 (citing cases). In short, the court follows *Mitchell* (as it must) and the well-reasoned decisions of six other circuits that have also rejected the argument that a jury must make its selection-phase decision under § 3593(e) by applying a beyond a reasonable doubt standard.

///

///

# III.  CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part

the government's Omnibus Penalty Phase Motions in Limine, Doc. No. 2605.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii,  May 7, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Williams*, Cr. No. 06-00079 JMS/KSC, Order Granting in Part and Denying in Part Government's Omnibus Penalty Phase Motions in Limine, Doc. No. 2605