IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CRIM. NO. 06-00079 JMS/KSC |
|---|---|---|
| Plaintiff, | ) ) | ORDER (1) GRANTING IN PART |
| vs. | ) ) ) | GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE CERTAIN MITIGATING FACTORS AND TO |
| NAEEM J. WILLIAMS, | ) ) | COMBINE CERTAIN MITIGATING FACTORS, DOC. NO. 2683; AND |
| Defendant. | ) ) ) ) ) | (2) DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO RESTRICT VICTIM IMPACT EVIDENCE, DOC. NO. 2727 |
| _____ | ) | |

**ORDER (1) GRANTING IN PART GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE CERTAIN MITIGATING FACTORS AND TO COMBINE CERTAIN MITIGATING FACTORS, DOC. NO. 2683; AND (2) DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO RESTRICT VICTIM IMPACT EVIDENCE, DOC. NO. 2727**

**I. INTRODUCTION**

This Order addresses two issues raised in recent Motions filed by the parties. First, the court GRANTS the government's May 15, 2014 Motion in Limine, Doc. No. 2683, to the extent it seeks to preclude Defendant Naeem Williams ("Defendant") from raising as mitigating factors that the U.S. Army, including the Child and Youth Services Office at Schofield Barracks, was on

notice that Talia Williams was being abused by Defendant and Delilah Williams.[1]
The court further DENIES Defendant's Motion in Limine to Restrict Victim Impact Evidence and to Permit Certain Defense Evidence in Response to Victim Impact Evidence, Doc. No. 2727, to the extent it seeks to establish that statements or allegations -- made in a civil lawsuit by Tarshia Williams against the government for alleged negligence arising out of those same circumstances -- constitute binding judicial admissions or prior inconsistent statements.

## II. ANALYSIS

### A. Third Party Culpability as a Mitigating Factor

The government argues that evidence suggesting that the U.S. Army had notice of Talia Williams' abuse is not relevant to mitigation because it is not related to Defendant's background, character, or record, or the circumstances of his offense. In response, Defendant argues that the scope of mitigation evidence is much broader than as proposed by the government, and that this evidence is relevant to mitigation.[2] The court therefore first outlines the scope of what

---

[1] This Order addresses only one of the issues raised in Doc. No. 2683 -- the other issues will be ruled on separately.

[2] The proposed mitigating factors include that (1) "authorities within the U.S. Army, including at the Child and Youth Services Office at Schofield Barracks, were on notice that there were concerns that Talia Williams was being beaten prior to her death," (Factor 144); (2) "staff members at CYS have stated they heard Delilah Williams discuss beatings of Talia, and that she closed windows to diminish the sound of the beatings, all of which was discussed with staff

(continued...)

constitutes mitigating evidence, and then addresses whether evidence regarding the U.S. Army's notice falls within such scope.

### 1. *Framework*

The Federal Death Penalty Act ("FDPA") provides that the scope of mitigating evidence involves several different categories:

> Mitigating factors. -- In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:
>
> (1) Impaired capacity. -- The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.
>
> (2) Duress. -- The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.
>
> (3) Minor participation. -- The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively

---

[2](...continued)
supervisors prior to Talia's death," (Factor 145); (3) "Tarshia Williams is alleging in a lawsuit that the Department of the Army bears some responsibility for Talia's death," (Factor 146); (4) "the periodic summoning of MP's to the Williams' household, together with the sounds of beatings, arguments, and yelling, amounted to notice to the Army, and to the community at Wheeler Army Airfield Housing, that Talia Williams was being abused," (Factor 147); and (5) "any failure by Army personnel, including MP's, Child and Youth Services Office personnel, to address the possibility that Talia Williams was being abused prior to her death is a factor in mitigation that you can consider as a basis for imposing a life sentence," (Factor 148). *See* Doc. No. 2658.

> minor, regardless of whether the participation was so
> minor as to constitute a defense to the charge.
>
> (4) Equally culpable defendants. -- Another defendant or
> defendants, equally culpable in the crime, will not be
> punished by death.
>
> (5) No prior criminal record. -- The defendant did not
> have a significant prior history of other criminal conduct.
>
> (6) Disturbance. -- The defendant committed the offense
> under severe mental or emotional disturbance.
>
> (7) Victim's consent. -- The victim consented to the
> criminal conduct that resulted in the victim's death.
>
> (8) Other factors. -- Other factors in the defendant's
> background, record, or character or any other
> circumstance of the offense that mitigate against
> imposition of the death sentence.

18 U.S.C. § 3592(a).

Thus, "[t]he Act lists seven types of mitigating factors, plus a catch-all, that the jury 'shall consider' in determining whether to recommend a death sentence." *United States v. Gabrion*, 719 F.3d 511, 524 (6th Cir. 2013) (en banc), *cert. denied*, 134 S. Ct. 1934 (2014). These factors generally concern: (1) a defendant's culpability ("[i]mpaired capacity[,]" "unusual and substantial duress," "the defendant's participation was relatively minor," "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death," "[t]he defendant committed the offense under severe mental or emotional disturbance[,]"

and "[t]he victim consented to the criminal conduct that resulted in the victim's death"); (2) the defendant's background ("The defendant did not have a significant prior history of other criminal conduct"); and (3) the remaining factor being a "catch-all" that "simply tracks the Supreme Court's definition of mitigation evidence." *Id.* That is, "[e]very indication in the statute is [that] all of the examples of mitigating evidence listed in § 3592(a) concern the defendant's background, culpability, or crime." *Id.*

Beyond the FDPA's categories of mitigating evidence, caselaw defines the scope of what constitutes mitigating evidence required by the Constitution. The Supreme Court has explained that "the jury must be given an effective vehicle with which to weigh mitigating evidence so long as the defendant has met a 'low threshold for relevance,' which is satisfied by 'evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'" *Smith v. Texas*, 543 U.S. 37, 44 (2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004)); *see Hedlund v. Ryan*, --- F.3d ----, 2014 WL 1622765, at *18 (9th Cir. Apr. 24, 2014) (same); *see also Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982) (stating that the sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence"); *United States v. Mitchell*, 502 F.3d 931, 991 (9th Cir. 2007) (stating that during the

5

sentencing phase, "[t]he district court had discretion to exclude irrelevant evidence").

*Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality), explains that mitigating evidence includes "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." A majority of the Supreme Court later adopted *Lockett's* formulation of mitigating evidence. *Eddings*, 455 U.S. at 109 (applying *Lockett*); *see also Penry v. Lynaugh*, 492 U.S. 302 (1989), abrogated on other grounds by *Atkins v. Virginia*, 536 U.S. 304 (2002) (discussing *Lockett* and *Eddings*). *Lockett* further made clear that this rule does not limit the trial court's "traditional authority . . . to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." 438 U.S. at 604 n.12. *Smith v. Mahoney*, 611 F.3d 978 (9th Cir. 2010), reasoned that these statements in *Lockett* "suggest that non-character, non-circumstance evidence need not factor into the constitutionality of a death sentence." *Id.* at 996.

Mitigating evidence need not have a causal nexus to the offense. *See Hedlund*, 2014 WL 1622765, at *18 (discussing *Tennard*, 542 U.S. at 287). Rather, the Supreme Court has made clear "that evidence of a defendant's background and character . . . is relevant in mitigation even if it does nothing to

6

explain why the defendant committed the crime of conviction" because it may "diminish the defendant's moral culpability." *Poyson v. Ryan*, 743 F.3d 1185, 1205 (9th Cir. 2013) (citing *Penry* and *Lockett*); *see also Tennard*, 542 U.S. at 287 ("[W]e cannot countenance the suggestion that low IQ evidence is not relevant mitigating evidence . . . unless the defendant also establishes a nexus to the crime.").

But relying on cherry-picked phrases from caselaw (as opposed to the full context in which such phrases appear), Defendant argues that mitigation evidence encompasses any evidence that "*might* serve as a basis for a sentence less than death." *See* Doc. No. 2639, Def.'s Opp'n at 3 (quoting *Tennard*, 542 U.S. at 287); *see also* Doc. No. 2695, Def.'s Opp'n at 4 (incorporating by reference Doc. No. 2639); *id.* at 3 (citing *Tennard* for proposition that the Supreme Court has referred to mitigation as having "virtually no limits" where in fact *Tennard*, 542 U.S. at 285, provides that "virtually no limits are placed *on the relevant mitigating evidence* a capital defendant may introduce concerning his own circumstances." (quoting *Payne v. Tennessee*, 501 U.S. 808, 822 (1991) (emphasis added)); *id.* (citing *Ayers v. Belmontes*, 549 U.S. 7, 21 (2006), for proposition that the Supreme Court has stated that mitigation evidence "potentially infinite" where in fact *Ayers* explained that the jury instructions at issue properly "conveyed the message that

7

the jury should weigh the finite aggravators against the potentially infinite mitigators").

The court rejects Defendant's selective interpretation of the caselaw to the extent it ignores that mitigating evidence must still be relevant, even if a "low threshold" of relevance applies. As *Gabrion* persuasively explains:

> Mitigation evidence . . . is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case. It is true that the Supreme Court has said that mitigation evidence includes evidence that "the sentencer could reasonably find . . . warrants a sentence less than death." *Tennard v. Dretke*, 542 U.S. 274, 285 (2004) (quotation marks omitted). But the key word there is "reasonably"; and read in the context of the rest of the Supreme Court's mitigation-evidence caselaw, and *Penry* in particular, that passage simply refers to evidence relevant to "a reasoned moral response to the defendant's background, character, and crime." *Penry*, 492 U.S. at 319. Otherwise, for example, the Eighth Amendment would compel admission of evidence regarding the positions of the planets and moons at the time of the defendant's offense -- so long as he can show that at least one juror is a firm believer in astrology. To read the *Tennard* passage (and others like it) in the manner that Gabrion suggests would be to transform mitigation from a moral concept to a predictive one, and make a caricature of the law. We decline the suggestion.

719 F.3d at 522. *See also United States v. Fell*, 531 F.3d 197, 219 (2d Cir. 2008) (explaining that the defendant does not have "carte blanche to introduce any and all

evidence that it wishes," and that the court maintains its gatekeeping function (quotations and citations omitted)).

Thus, under the Constitution and the FDPA, the court will allow Defendant to present relevant mitigating evidence, which includes any evidence related to Defendant's background, character, or record, or the circumstances of Defendant's offense.

### 2. *Application to Third Party Culpability as a Mitigating Factor*

Defendant seeks to present as mitigating factors the alleged culpability of a non-party, the U.S. Army, in failing to take action to protect Talia Williams despite notice of her abuse. None of the factors enumerated in § 3592(a) lists third party negligence as a relevant mitigating factor. Nor does the U.S. Army's alleged negligence fall within the catch-all of § 3592(a)(8) as "any other circumstance of the offense that mitigate[s] against imposition of the death sentence" -- that the U.S. Army had notice of Talia Williams' abuse is not a "circumstance" of Defendant's offense of child abuse murder and murder in the perpetration of a pattern and practice of assault and torture against a child as charged in Count 1 and Count 2 of the Second Superseding Indictment. That is, the U.S. Army was not involved in the offense conduct, and its notice of any abuse does not in any way lessen and/or explain Defendant's conduct in carrying out the offense.

The court's conclusion that any negligence of the U.S. Army is not mitigating evidence is confirmed by cases addressing admissibility of third party culpability as a mitigating factor. For example, *Eaglin v. Florida*, 19 So.3d 935 (Fla. 2009), affirmed that security lapses and other systems failures in the prison where the defendant killed a guard and inmate were not relevant mitigating evidence. *Eaglin* explained that mitigating evidence must be relevant to the defendant's character, record, or circumstances of the offense, and "any negligence on the part of the prison does not reduce the moral culpability" of the defendant for the murders. *Id.* at 944.

As another example, *Williams v. Norris*, 612 F.3d 941 (8th Cir. 2010), denied habeas relief for a defendant who committed various capital offenses after escaping from prison. *Williams* rejected that the prison's failure to prevent the defendant's escape was relevant mitigating evidence or that he was entitled to funding for a corrections expert to testify regarding the prison's negligence. *Id.* at 946. *Williams* explained that the Arkansas Supreme Court's determination that this evidence "'has nothing to do with a criminal's character, record, background, condition, or the circumstances of the crime [and is therefore] not relevant on the issue of punishment,' was in accord with federal law and not erroneous." *Id.* at 948 (quoting *Williams v. Arkansas*, 67 S.W.3d 548, 563 (Ark. 2002)).

In opposition, Defendant cites to the dockets of various capital murder cases, which allowed on their special verdict forms mitigating factors directed to either the victim's involvement in the offense or in the case of prison killings, the prison's negligence in allowing conditions which contributed to the offense. *See* Doc. No. 2695, Def.'s Opp'n at 27-28 & n.9. None of these cases, however, addressed whether third party culpability is in fact a relevant mitigating factor. Indeed, the court reviewed each of the dockets cited by Defendant and the court could find no objections and/or discussion by the court as to third party culpability.[3] Thus, the dockets cited by Defendant are ultimately unhelpful in determining whether any negligence on the part of the U.S. Army is proper mitigating evidence.[4]

In sum, the court finds that any alleged negligence by the U.S. Army in failing to take action as to Talia Williams' abuse does not constitute a mitigating

---

[3] Although in *United States v. McCluskey*, Cr. No. 10-2734 JCH (D. N.M.), the government objected to mitigating factors directed to third party negligence, *McCluskey* overruled such objection as untimely and therefore did not address the substance of the government's objection. Further, the only case cited by Defendant, *United States v. Arquart*, 2012 WL 603243 (D. Conn. Feb. 24, 2012), addressed the victim's actions contributing to the offense, not the actions of a third party.

[4] At a May 29, 2014 hearing, defense counsel further argued that the court should allow these mitigating factors to ensure uniformity where the cases cited in Defendant's Opposition have allowed such factors and no caselaw has rejected third party culpability as a mitigating factor. The court easily rejects this argument -- the court is not ruling in a manner inconsistent with any legal consensus.

factor in considering Defendant's sentence.  Stated differently, Defendant has not met the low threshold of relevance satisfied by evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.  Instead, the U.S. Army's alleged negligence in not properly assessing, evaluating, or investigating abuse of Talia Williams has no bearing on Defendant's background, record, or character, or any other circumstance of the offense.

**B.      Allegations by Tarshia Williams in her Civil Action**

Next, Defendant argues that certain statements or allegations Tarshia Williams has made in her civil lawsuit against the United States (*Tarshia Williams v. United States*, Civ. No. 08-00437 ACK-BMK) (the "civil action") constitute "prior inconsistent statements" or "judicial admissions" -- and such allegations should thus be admitted in evidence should Tarshia Williams testify that Defendant "caused injury, harm, and loss" to her by causing the death of her daughter, Talia Williams.  Doc. No. 2727, Def.'s Mot. at 13.  The court DENIES the request to the extent Defendant seeks to introduce any such allegations as binding judicial admissions or inconsistent statements.  The court did permit, however, Defendant

to cross-examine Tarshia Williams regarding the source or sources of any harm or distress that she testifies she suffered by the death of Talia Williams.[5]

In October 2008, Tarshia Williams filed her civil action against the United States under the Federal Tort Claims Act ("FTCA"), alleging claims in negligence and parental loss of consortium for breaches of certain duties relating to government employees' alleged failure to assess, evaluate, and investigate abuse of Talia Williams. *See generally*, Doc. No. 1 (Civ. No. 08-00437 ACK-BMK (D. Haw. Oct. 3, 2008), Compl. at 6-8. In particular, Defendant points to several allegations in that Complaint to the effect that "Tarshia Williams[] has suffered severe and devastating emotional distress and parental loss of consortium over Talia's death occasioned and proximately caused by the wrongful and illegal acts and omissions of the [United States]"). *Id.* ¶ 7. Defendant contends that such statements or allegations are inconsistent with a proffer that Tarshia Williams will testify during the selection phase that Defendant caused her "injury, harm, and loss" by killing Talia -- and thus the specific allegations of the civil complaint are

---

[5] The civil action allegations are not in any manner inconsistent with Tarshia Williams' testimony. That is, the allegations in the civil action and her trial testimony were completely consistent.

binding admissions for use as impeachment evidence against Tarshia Williams.[6] The court disagrees.

Statements or allegations that Tarshia Williams made in pleadings in her civil action are not "judicial admissions" for present purposes in this criminal action. Defendant relies on a principle that, under certain circumstances, "a statement in a complaint, answer or pretrial order is a judicial admission, as is a failure in an answer to deny an allegation." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (citations omitted). But this general rule does not apply here -- admissions in one court proceeding are generally not considered binding in separate litigation. *See*, *e.g.*, *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) ("[A] statement made in one lawsuit cannot be a judicial admission in another."); *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991) ("[J]udicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made."); *United States v. Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986) ("[A] pleading in one case is not a conclusive judicial admission in a later one[.]"); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968) ("[J]udicial admissions are binding for the purpose of the case in which the admissions are

---

[6] In fact, Tarshia Williams did testify that she was injured by the killing of Talia.

made including appeals. This does not make the same judicial admissions conclusive and binding in separate and subsequent cases.").[7]

## C.     Allegations or Statements by the Government in the Civil Action

Similarly, Defendant argues that two statements or allegations by the government in its Answer to Tarshia Williams' Complaint in the Civil Action constitute admissions of a party opponent under Federal Rule of Evidence 801(d)(2)(A) -- and as such are potential mitigating factors regarding the "circumstances of the offense" under 18 U.S.C. § 3592(a)(8).[8]  The court disagrees.

In particular, in the civil action, the government asserted the following as *defenses* to Tarshia Williams' negligence-based FTCA claims:

///

///

---

[7] Defendant recognizes that, at this selection phase, the Federal Rules of Evidence are not applicable. *See* 18 U.S.C. § 3593(c) ("Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."). Nevertheless, Defendant argues that -- guided by general evidentiary principles -- the government's assertions in its pleading are "admissions." Whether by evidentiary principles, or caselaw defining a "judicial admission," under § 3593(c), deeming the government's assertions in the civil action to be binding admissions would "mislead the jury."

[8] As noted above, the Federal Rules of Evidence are inapplicable in this selection phase. Assuming, however, that principles underlying Rule 801 may provide guidance, the court concludes that the government's statements in the civil action are not admissions -- as with Tarshia's allegations, deeming the government's assertions in that action to be admissions would "mislead the jury" under § 3593(c).

SECOND DEFENSE

> Plaintiff's injuries were the result, in whole or in part, of the negligence of third parties.

THIRD DEFENSE

> Plaintiff's injuries were the result, in whole or in part of plaintiff's own comparative or contributory negligence.

Doc. No. 8 (Civ. No. 08-00437 ACK-BMK (D. Haw. Jan. 26, 2009), Answer at 5.

First, to the extent Defendant argues that these allegations constitute binding judicial admissions, the argument fails. As established above, admissions (assuming such affirmative *defenses* could constitute "admissions") in one court proceeding generally do not constitute a binding judicial admission in a different case. *See, e.g.*, *Kohler*, 80 F.3d at 1185.

Moreover, "judicial admissions generally pertain to binding assertions of *fact*, matters that a party unequivocally declares to be true because that party is uniquely positioned to know so and concede." *Banks v. Yokemick*, 214 F. Supp. 2d 401, 406 (S.D.N.Y. 2002). Stated differently, "[t]he scope of a judicial admission by counsel is restricted to unequivocal statements as to matters of fact which otherwise would not require evidentiary proof -- it does not extend to counsel's statements of their conception of the legal theory of a case, i.e., legal opinion or conclusion." *Eli Lilly & Co. v. Valeant Pharm. Int'l.*, 2011 WL 573761, at *3

(S.D. Ind. Feb. 15, 2011) (citation omitted); *see also, e.g.*, *Harrington v. Nashua*, 610 F.3d 24, 31 (1st Cir. 2010) (reasoning that legal conclusions are not binding judicial admissions) (citing cases). And the two defenses that Defendant points to -- that Tarshia's injuries from any government negligence are wholly or partly attributable to third parties, and/or that her injuries are wholly or partly resulting from contributory negligence -- are certainly not "unequivocal statements as to matters of fact which otherwise would not require evidentiary proof." *Banks*, 214 F. Supp. 2d at 406. They are akin to legal allegations or conclusions, which cannot be judicial "admissions." *See, e.g.*, *Harrington*, 610 F.3d at 31.

### III.  CONCLUSION

Based on the above, the court GRANTS the government's Motion in Limine to Preclude Certain Mitigating Factors and to Combine Certain Mitigating Factors, Doc. No. 2683, to the extent it seeks to preclude Defendant from presenting as mitigation that the U.S. Army had notice of Talia's abuse. The court also DENIES Defendant's Motion in Limine to Restrict Victim Impact Evidence and to Permit Certain Defense Evidence in Response to Victim Impact Evidence, Doc. No. 2727, to the extent it seeks to establish binding judicial admissions or

///

///

prior inconsistent statements made in Tarshia Williams' civil action (Civ. No. 08-00437 ACK-BMK).

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, May 30, 2014.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*United States v. Williams*, Cr. No. 06-00079 JMS/KSC, Order (1) Granting in Part Government's Motion in Limine to Preclude Certain Mitigating Factors and to Combine Certain Mitigating Factors, Doc. No. 2683; and (2) Denying in Part Defendant's Motion in Limine to Restrict Victim Impact Evidence, Doc. No. 2727