IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIM. NO. 06-00079 JMS/KSC |
| | ) |
| Plaintiff, | ) ORDER DENYING DEFENDANT'S |
| | ) MOTION FOR A MISTRIAL OR, FOR |
| vs. | ) A DIRECTED VERDICT, OR IN THE |
| | ) ALTERNATIVE, FOR AN ORDER |
| NAEEM J. WILLIAMS, | ) THAT EACH JUROR BE |
| | ) QUESTIONED ABOUT CERTAIN |
| Defendant. | ) TOPICS BEFORE ANY |
| | ) DELIBERATIONS ARE PERMITTED |
| _____ | ) TO BE RESUMED, DOC. NO. 2844 |

**<u>ORDER DENYING DEFENDANT'S MOTION FOR A MISTRIAL OR, FOR A DIRECTED VERDICT, OR IN THE ALTERNATIVE, FOR AN ORDER THAT EACH JUROR BE QUESTIONED ABOUT CERTAIN TOPICS BEFORE ANY DELIBERATIONS ARE PERMITTED TO BE RESUMED, DOC. NO. 2844</u>**

## I. <u>INTRODUCTION</u>

In this capital murder trial against Defendant Naeem Williams ("Defendant"), the jury has already determined that Defendant is guilty of the capital offenses, and that he is eligible for the death penalty. The jury has concluded six days of deliberations on the selection phase -- determining whether Defendant should be sentenced to death or to life in prison without the possibility of release. In making this determination, the jury must consider the evidence presented in all three stages of trial -- the guilt phase, eligibility phase, and selection phase -- which spans 36 days of testimony. The verdict form requires the

jury to consider seven nonstatutory aggravating factors and each juror individually to consider 149 mitigating factors, and whether any additional mitigating information has been proved. After that process, each juror must individually weigh these factors in determining Defendant's sentence.

Rather than having the jury complete its deliberations, Defendant offers speculation upon speculation as to the course of the deliberations, then asks this court to declare a mistrial or enter a directed verdict, all without any legal support. In short, the Motion is without any basis in fact or law and is DENIED.

## II. **DISCUSSION**

**A.    Request for Mistrial**

Citing Federal Rule of Criminal Procedure 31(b)(3), Defendant seeks a mistrial on the basis that the jury is deadlocked. Defendant reaches this conclusion not based on any statement by the jury suggesting deadlock, and instead asks the court to invade the province of the jury merely because the jury has deliberated for six days without yet coming to a verdict. The court easily rejects this argument.

"The decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge, a point that 'has been consistently reiterated in decisions of [the Supreme Court]." *Renico v. Lett*, 559 U.S. 766, 774 (2010)

(quoting *Illinois v. Somerville,* 410 U.S. 458, 462 (1973)).  This broad discretion is in recognition that "the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate." *Id.* (quoting *Arizona v. Washington*, 434 U.S. 497, 510 n.28 (1978)).  As a result, no "rigid formula" applies, and the court need not "articulate on the record all the factors which informed the deliberate exercise of his discretion."  *Id.* (citations omitted).

With that said, however, the Ninth Circuit has outlined a number of potentially relevant factors, including "the jury's collective opinion that it cannot agree, the length of the trial and complexity of the issues, the length of time the jury has deliberated, whether the defendant has objected to a mistrial, and the effects of exhaustion or coercion on the jury."  *Harrison v. Gillespie*, 640 F.3d 888, 905 (9th Cir. 2011) (en banc) (quoting *Rogers v. United States*, 609 F.2d 1315, 1317 (9th Cir. 1979)).  Of these factors, "[t]he most critical factor is the jury's own statement that it is unable to reach a verdict."  *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1029 (9th Cir. 2000).

Fatal to Defendant's Motion is that a deadlocked jury is an entirely appropriate verdict in a capital case selection phase.  The Special Findings Form

provides the jury with that exact option -- that it is unable to reach a unanimous verdict. So, in arguing that the jury is deadlocked, Defendant has either (1) forgotten that this is a capital murder case where the jury has been explicitly instructed that a failure to come to a unanimous verdict results in a sentence of life imprisonment, *see* Doc. No. 2784, Court's Instruction No. 2; or (2) thinks that the jury is so inept that it cannot understand the jury instructions explaining what to do if it is deadlocked. Needless to say, either possibility is ridiculous. This jury has shown, on multiple occasions, that it is fully capable of understanding the court's instructions, and the court has no reason to doubt that if the jury was in fact deadlocked, it would have informed the court by stating that it has reached a verdict.[1]

And even if a jury in the selection phase of a capital case could somehow be "deadlocked," Defendant again ignores the obvious -- the jury has given *no* indication whatsoever that it is deadlocked. The court is not aware of -- and Defendant fails to cite -- *any* case in which the court has declared a mistrial based on jury deadlock where the jury has expressed no concerns about failing to

---

[1] If anything, the jury has indicated that it wishes to proceed with deliberations. On June 20, 2014, the court inquired that if the jury did not reach a verdict that day, whether it wished to continue deliberations on June 25 or 26. Doc. No. 2843. In response, the jury stated it wished to continue deliberations on June 26. Doc. No. 2842.

4

reach a unanimous verdict.[2] Rather, the court must follow a specific process in determining whether a jury is deadlocked -- "[o]n receiving word from the jury that it cannot reach a verdict, the district court *must* question the jury to determine independently whether further deliberations might overcome the deadlock." *See id.* (emphasis added). With no indication by the jury of deadlock in this case, this process is not even triggered. And the court will not simply *assume* that the jury is deadlocked by the number of days of deliberation given that the jury has numerous factual issues to decide in making the ultimate decision of whether Defendant should be sentenced to death. To usurp the jury's function based on Defendant's unsupported assumptions would not only be unprecedented but contrary to law.

Ignoring these fatal defects, Defendant instead argues that the jury is deadlocked given that the selection phase consisted of five days of testimony only, the issues before the jury are not complex, and other capital cases have reached verdict in much shorter periods of time. Doc. No. 2844, Def.'s Mot. at 7-8. Defendant's argument is simplistic and disingenuous -- what other jurors did in a

---

[2] Defendant argues the jury's failure to express that is hopelessly deadlocked is not determinative because *Renico* "undercut substantially" the weight to be given to a jury's assertion that it is hopelessly deadlocked in determining whether to grant a mistrial. Doc. No. 2844, Def.'s Mot. at 6. Defendant ignores, however, that in *Renico*, the jury sent a note asking what would happen if they could not agree. 559 U.S. at 770. The jury in this action has made no such statement.

handful of selected cases is completely irrelevant to this case,[3] and Defendant conveniently ignores that the jury must consider evidence from all three phases of trial, which spanned over 36 days of testimony and included over a dozen expert witnesses.

Indeed, as Defendant should well know, the jury must determine whether it finds unanimously and beyond a reasonable doubt seven non-statutory aggravating factors, and then each juror must individually determine whether Defendant has established by a preponderance of the evidence each of the 149 mitigating factors that Defendant put forward, as well as whether any additional mitigating information not listed by Defendant exists. The factors Defendant presented cover a range of different topics -- including, for example, Delilah Williams' role in the offense (presented in the guilt phase), Defendant's intellectual capacity (presented in the eligibility phase), and Defendant's background (presented in the selection phase). And once each juror determines each of these factors, the jury must still engage in an individual weighing analysis to determine whether Defendant should be sentenced to death or life imprisonment without

---

[3] And in any event, as outlined by the government, the majority of cases cited by Defendant involved significantly fewer mitigating factors than presented in this case. Doc. No. 2848, Gov't Opp'n at 5-6.

release.  Needless to say, Defendant cannot seriously complain that the jury is taking its duty and the court's instructions seriously in reaching its verdict.

And all indications from the jury are that it is taking its job seriously and following the court's instructions methodically.  For example, on their first full day of deliberations, the jury inquired generally regarding the meaning of finding any particular mitigating factor proffered by Defendant.  Doc. No. 2811.  On the second day of deliberations, the jury requested the meaning of certain terms used in a non-statutory aggravating factor.  Doc. No. 2818.  And on the fifth day of deliberations, the jury raised a seeming contradiction in Defendant's mitigating factor 149 that "[u]nder all the facts and circumstances, the jury wishes to show mercy," given that each mitigating factor should be determined by each juror individually and "mercy" is part of the final individual weighing process.  *See* Doc. No. 2836.

In a final attempt to spin gold out of straw, Defendant argues that a mistrial is warranted because the jury has taken two "lengthy" breaks from June 9-11, 2014 and June 23-25, 2014, and that there has been extensive media coverage of this case.  Doc. No. 2844, Def.'s Mot. at 15-16.  Although Defendant fails to weave these two facts together, presumably Defendant is suggesting that these breaks have allowed the jury to be exposed to and/or influenced by media coverage

during its deliberations, especially where one juror has posted on Facebook that he has jury duty.[4] This argument both stretches the facts of this case and defies logic.

As an initial matter, Defendant mis-states the breaks in deliberations -- it has been the court's practice for trial to proceed Tuesdays through Fridays (leaving Mondays for other court business), the jury stated its preference that it not deliberate on Mondays, and at no time did Defendant suggest that the jury should deliberate continuously without breaks (*i.e.*, on weekdays and weekends and/or on all weekdays). Thus, the only "breaks" in the jury's deliberations were June 10-11, 2014[5] and June 24-25, 2014. Defendant never objected to these breaks, including most recently on June 20, 2014 when the court offered to have the jury deliberate on June 24-25, 2014. Thus, Defendant cannot seriously contend that these breaks amount to prejudice where he agreed to them.

And to the extent Defendant speculates that the breaks increased the possibility that the jury would be exposed to media coverage of the trial, Defendant

---

[4] Defendant also argues that the length of deliberations may result in exhaustion and jurors being coerced into a verdict they would not otherwise support. *See* Doc. No. 2855, Def.'s Mot. at 12. Undercutting this argument is that there is no evidence of jury (or juror) exhaustion, that jury deadlock in a federal capital case results in a sentence of life imprisonment without release, and that the court has instructed the jury that Defendant's sentence is an individual determination for each juror to make.

[5] In fact, the record shows that the jury did not begin its deliberations (other than apparently selecting a foreperson) until June 12, 2014, and June 11, 2014 was a Hawaii state holiday recognized by the District of Hawaii.

appears to claim that the jurors, with apparently nothing else to do while on break, are spending their time searching news archives on this trial. To accept this argument would mean that the jurors have ignored the court's constant admonition -- given during all three stages of trial, and in all preliminary and final instructions -- that they are not to read any news stories or articles, listen to any radio, or watch any television reports about the case or about anyone who has anything to do with it. *See, e.g.*, Doc. No. 2593, Tr. Apr. 17, 2014 at 35-36. Rather, the jury has shown diligence in ensuring that they are not privy to outside sources of information.[6]

Finally, that one juror posted on Facebook that he had jury duty does not suggest that the jury has ignored the court's admonitions. The fact that these jurors are serving jury duty is no secret, and the juror's Facebook posts reveal no information regarding the substance of the trial or jury deliberations; the juror does not even identify the case by name, much less make any statement beyond the mere fact that he has jury duty. The juror did not violate any court order, and does not indicate any exposure to extrinsic sources. Indeed, courts have found that jurors'

---

[6] For example, during an earlier stage of trial, one juror reported that the juror had been approached by media, and had rebuffed the contact. In response, the court warned the media present that they may not have contact with jurors, and further instructed the jury to report any media contact to the Courtroom Manager. No further contact was reported.

Another juror reported that the juror's contact information is provided through the juror's church to inmates seeking guidance, and that the juror had received a call from an inmate, which the juror rejected in light of his jury service. The parties agreed that no inquiry was necessary, and it appeared that the juror was taking a conservative approach in reporting this event.

9

Facebook posts including much more information than at issue here do not affect the impartiality of the jury. *See, e.g.*, *United States v. Ganias*, --- F.3d ----, 2014 WL 2722618, at *5 (2d Cir. June 17, 2014) (concluding that "friending" a fellow juror, and juror Facebook posts such as "Jury duty 2morrow. I may get 2 hang someone . . . can't wait," and "just told this case could last 2 weeks . . . Jury duty sucks!" did not threaten a defendant's Sixth Amendment right to an impartial jury); *United States v. Fumo*, 655 F.3d 288, 304 (3d Cir. 2011) (similar). Thus, the juror's posts here give the court absolutely no reason to believe that any juror has been exposed to prejudicial or extraneous information, or otherwise violated the court's admonitions.

In sum, Defendant has offered no cogent reason -- based in law or fact -- for this court to find that the jury is deadlocked and to declare a mistrial. Rather, every indication is that the jury is diligently carrying out its duties in determining Defendant's sentence, and to declare a mistrial in this capital murder case would impermissibly invade the province of the jury. *See, e.g.*, *United States v. Evanston*, 651 F.3d 1080, 1083-84 (9th Cir. 2011). The court therefore DENIES Defendant's Motion for a Mistrial.

///

///

B.     **Request For Directed Verdict**

In the alternative, Defendant moves for a directed verdict, invoking the court's inherent supervisory authority to dismiss an indictment with prejudice. *See, e.g.*, *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) ("Courts may dismiss an indictment under their inherent supervisory powers '(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.'") (citation omitted).[7]  Defendant seeks a court order -- in the midst of jury deliberations, where, again, there is absolutely no hint of a deadlock -- directing a verdict in favor of a life sentence, for all of the same reasons he seeks a mistrial.  Doc. No. 2844, Mot. at 19.  For the reasons stated above, this alternative motion is DENIED.

---

[7] At this selection/penalty phase, the ordinary rule for judgment of acquittal (Federal Rule of Criminal Procedure 29) does not apply. *See, e.g.*, *United States v. Runyon*, 652 F. Supp. 2d 716, 718 (E.D. Va. 2009) ("Rule 29 . . . by its very terms, only applies to the guilt/innocence phase of trial. . . . Questions of 'acquittal,' 'conviction,' or 'guilty verdict' are inapposite to a sentencing hearing [under the FDPA.]").  Nevertheless, the court retains power, in appropriate circumstances, to review a jury's sentencing determinations under the FDPA. *See, e.g.*, *United States v. Sampson*, 335 F. Supp. 2d 166, 200 (D. Mass. 2004) ("The fact that Rule 29 does not cover the penalty phase of a capital case does not mean that the defendant is left without protection against a judgment based on insufficient evidence.  The court has the inherent power to evaluate the sufficiency of the evidence against a defendant.").

## C. Request to Question Each Individual Juror

As a final alternative, Defendant argues that before deliberations are permitted to resume, the court should voir dire each juror about the potential of outside influences and whether each juror believes there is a reasonable probability that the jury can reach a unanimous verdict if sent back for further deliberations.[8] (This Order does not address the specific concerns regarding a juror's Facebook postings, as that aspect is addressed in different proceedings.)

Defendant -- again, based purely on speculation -- asks the court to "voir dire each juror about the potential of outside influences before deliberations are permitted to be resumed." Doc. No. 2844, Def.'s Mot. at 20. He bases this request on "two lengthy delays" in deliberations in this selection phase, and speculates that jurors may have been exposed to media coverage or other extrinsic sources of information in the interim. The court DENIES this request.

Initially, the two periods that Defendant refers to are hardly "lengthy," consisting of (as described above) two previously scheduled, two-day recesses on (1) Tuesday, June 10, 2014 and Wednesday, June 11, 2014 (a state holiday); and (2) Tuesday, June 24, 2014, and Wednesday, June 25, 2014.[9] These periods were

---

[8] For all the reasons stated above, the court will not inquire if the jury is "deadlocked."

[9] As mentioned above, the court has not held jury proceedings in this case on Mondays
(continued...)

12

disclosed to counsel and the jury, and were not objected to by Defendant. These breaks in deliberations do not justify individual voir dire of jurors.

First, Defendant has no basis for such an inquiry at this time. There is no indication, for example, that any juror might have been exposed to media coverage, conducted any unauthorized research, or been contacted by others regarding this case. On multiple occasions, the court has instructed the jury not to be exposed to extraneous information, whether on the internet, television, newspaper, or radio. Defendant has offered no reason to believe that jurors are ignoring the court's constant admonitions, have been reading media accounts of the trial, or have researched or discussed issues when not deliberating together.

Second, at Defendant's request at an earlier phase of the trial (see Doc. No. 2575, Notice of Defense Requested Inquiry and Instruction on Media Coverage), the court *already* made such an inquiry to the entire jury. On April 17, 2014, the court specifically asked the jury to report whether jurors had been

---

[9](...continued)
since the beginning of trial. Accordingly, the jury has not deliberated on Mondays at any phase of the case. (The jury has not been asked to deliberate on weekends or in the evenings.) The court provided the jury a trial calendar that indicates trial days, holidays, and other scheduled recesses. Jurors have since relied on that schedule, even when the court presented the jury with the opportunity to deliberate on other days. *See, e.g.*, Doc. No. 2843 (court communication to jury indicating the jury could choose to continue deliberations on June 25, 2014); Doc. No. 2842 (note from jury stating "The jury wishes to continue deliberations on Thursday June 26, due to employer commitments based on the previous calendar").

exposed to media coverage, told jurors to notify the court about any improper exposure, and emphasized the need for the jury's decisions to be based only on evidence received in court. *See* Doc. No. 2593, Tr. Apr. 17, 2014 at 35-36. Defendant has presented no reason why that prior inquiry is insufficient such that the court would now need to question jurors individually.

### III. **CONCLUSION**

Based on the above, the court DENIES Defendant's Motion for a Mistrial or, for a Directed Verdict, or in the Alternative, for an Order That Each Juror Be Questioned about Certain Topics Before Any Deliberations Are Permitted to Be Resumed, Doc. No. 2844.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 26, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Williams*, Cr. No. 06-00079 JMS/KSC, Order Denying Motion for a Mistrial or, for a Directed Verdict, or in the Alternative, for an Order That Each Juror Be Questioned about Certain Topics Before Any Deliberations Are Permitted to Be Resumed. Doc. No. 2844.